UNITED STATES of America, Appellee,

v.

Basil KYLES and Geoffrey Kyles, Defendants–Appellants.

Nos. 1331, 1410, Dockets 93–1689, 93–1711.

United States Court of Appeals, Second Circuit.

Argued July 18, 1994.

Decided Sept. 20, 1994.

As Amended Nov. 29, 1994.

Michael Young, New York City (John M. Andreini, Dubay & Andreini, Hartford, CT, of counsel), for defendant-appellant Basil Kyles.

David V. Esposito, Hamden, CT, for defendant-appellant Geoffrey Kyles.

Ronald S. Apter, Asst. U.S. Atty., New Haven, CT (Christopher F. Droney, U.S. Atty., New Haven, CT, of counsel), for appellee.

Before: WALKER, McLAUGHLIN, and JACOBS, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Basil and Geoffrey Kyles, brothers, were convicted by a jury in the United States District Court for the District of Connecticut (Alfred V. Covello, *Judge*) of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d). Geoffrey was also convicted of unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Both brothers appeal.

Geoffrey argues that federal agents unconstitutionally searched his bedroom. Even though the agents had a warrant to search the whole apartment, Geoffrey maintains that they were required to obtain a separate warrant to search his room because the door was locked, the agents knew that only Geoffrey had the key, and Geoffrey was not a suspect at the time the agents obtained the warrant.

Basil argues that the district judge abused his discretion by refusing to ask prospective jurors about racial bias on *voir dire*. Basil contends that the judge's failure to give the instruction was reversible error because Basil was accused of committing a violent crime against a victim of another race.

Basil also argues that the district judge should have severed the trials to prevent a confession by Geoffrey from incriminating Basil. He asserts that the district judge's decision to redact the reference to Basil from the confession was insufficient because the jury could still infer from the redacted confession that Basil was the other bank robber. Alternatively, Basil argues that the judge should have declared a mistrial because, despite the judge's ruling, the confession was erroneously presented to the jury in its unredacted form.

We affirm.

## BACKGROUND

On the morning of November 18, 1992, two masked men with semiautomatic handguns

robbed the Connecticut National Bank in Ansonia, Connecticut. As one robber guarded the bank door, the other vaulted the counter, pointed his gun at the teller, and ordered her to open the money drawers. The vaulter stuffed packages of $20 bills into a plastic bag. Unknowingly, he also filled the bag with several "dye packs"—packages of red dye and tear gas, designed to look and feel like bundles of money, that explode after removal from the bank.

As the robbers made their getaway in a Cadillac, the dye packs began exploding. To avoid the tear gas, the robber-passenger, who by this time had removed his mask, stuck his head out the window. A witness saw them. They drove to an apartment complex one mile from the bank, where a Plymouth Horizon awaited. Abandoning the Cadillac, they drove off in the Horizon.

Later that day, FBI agents found the Cadillac. They noticed that its front and rear seats were stained with red dye. On the floor, the agents discovered a dye-stained ski mask, $700 in stained currency, a nine millimeter bullet, and a swatch of red cloth.

FBI agents found the Horizon soon after, parked in a different apartment complex. The Horizon contained a second dye-stained ski mask, two more sections of red cloth, and a Pizza Hut employment application filled out by Basil. The employment application listed Basil's address as "11–A Malcolm Court," which was in the complex where the Horizon was found. The FBI also learned that the Horizon was registered to Basil's girlfriend, and that Basil had recently escaped from prison.

Later that day, Basil was arrested by Connecticut State Police outside 11–A Malcolm Court. The arresting officer noticed that Basil's jeans, sweatshirt, and hands were stained with red dye, and that Basil smelled of tear gas.

On November 19, FBI agents obtained a warrant to search 11–A Malcolm Court for evidence of the robbery, including clothing, currency, and money wrappers. The underlying affidavit explained that the agents believed this was Basil's address because he had written it on his Pizza Hut employment application.

FBI agents went to 11–A Malcolm Court the next day to execute the search warrant. Flora Kyles, the mother of the defendants, answered the door and invited the agents in. When asked who lived in the apartment, Mrs. Kyles responded that only she and Geoffrey lived there.

The agents began to look through the apartment. In the course of the search, the agents came upon a locked door. Mrs. Kyles told the agents that the door led to Geoffrey's bedroom, and that only Geoffrey had the key. The agents forced the door open. Inside, they found an envelope addressed to Basil. The envelope contained an auto repair order for the Horizon in Basil's name, and more than $2,000 in stained bills. The serial numbers on the bills matched those of the bills stolen from the bank. The agents also discovered a semiautomatic handgun and bullets.

Down the hall from Geoffrey's bedroom, the agents found a red section of cloth that matched the pieces seized from the two cars, and a towel tinged with red dye.

Geoffrey arrived at the apartment while the FBI agents were still there, and was arrested. The agents told Geoffrey about the search warrant, advised him of his *Miranda* rights, and searched him. They found six dye-stained $20 bills and a key to the bedroom in his pockets. Dismayed at the turn of events, Geoffrey blurted to the agents: "My goddamned brother got me into this, these bank robberies."

Basil and Geoffrey were indicted on charges of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). Geoffrey was also charged with unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and receiving stolen bank money, in violation of 18 U.S.C. § 2113(c). Both defendants pled not guilty.

Geoffrey moved to suppress the items found in his bedroom. He argued that his bedroom was a separate residence not covered by the warrant because the door was locked, only he possessed the key, and he was not named in the affidavit underlying the

search warrant. Thus, Geoffrey concluded, the warrant did not authorize the agents to search his bedroom.

Basil moved to sever his trial from Geoffrey's. He argued that severance was necessary because Geoffrey's statement to the FBI agents incriminated Basil.

After a hearing, the district judge denied both motions. He denied Geoffrey's motion to suppress the fruits of the search of his bedroom because he found that 11–A Malcolm Court was a single-family residence. The district judge ruled that Geoffrey's exclusive possession of the key to his bedroom, by itself, did not render his bedroom a separate residence. Accordingly, he found that the agents did not need a second warrant to search Geoffrey's room.

The district judge also denied Basil's motion to sever. While he agreed that Geoffrey's statement obviously incriminated Basil without affording him an opportunity to cross-examine Geoffrey, the district judge found that this problem could be obviated by redacting the statement. Accordingly, the district judge directed that the pronoun "he" be substituted for the phrase "my goddamned brother."

Before jury selection, Basil's counsel requested that the district judge ask the prospective jurors on *voir dire* whether they had "any opinions or inclinations" about Basil as a defendant because he was black. The district judge declined. Instead, he asked the prospective jurors whether they had ever been crime victims and whether they had relatives in law enforcement. Basil's counsel objected to omitting the racial bias question. Geoffrey's counsel submitted no questions, and did not join in the objection. The objection was overruled.

At the joint trial, the government called eyewitnesses from the bank who testified that one robber had dark skin, the other had lighter skin. Because the robbers wore ski masks in the bank, however, no witnesses to the robbery could positively identify either defendant as the bank robber. A witness to the getaway, however, testified that the then-unmasked robbers resembled Basil (passenger) and Geoffrey (driver).

The government next called Richard Teahan, one of the FBI agents who searched the apartment, to testify as to Geoffrey's post-arrest statement. Agent Teahan had been warned several times that he should recite the statement as redacted by the district judge, omitting the reference to Basil. Despite the warnings, Teahan testified to the unredacted statement, telling the jury that Geoffrey said his brother got him into the bank robberies. Basil's counsel immediately moved for a mistrial. The district judge denied the motion, but instructed the jury to disregard Agent Teahan's statement.

The jury convicted Basil and Geoffrey of armed bank robbery, and convicted Geoffrey of unlawful possession of a firearm. The defendants were each sentenced to 21 years and 10 months in prison, followed by five years' supervised release.

## DISCUSSION

### I. *The Search*

Geoffrey argues that the district judge erred by admitting the evidence found in Geoffrey's locked bedroom. He contends that the agents did not have probable cause to believe that evidence of the robbery would be found in his room because: (1) his room was a separate residence; and (2) he was not named as a suspect in the affidavits underlying the warrant. We disagree.

The scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and the objects of the search, and by the places in which the officers have probable cause to believe those objects may be found. *See Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). Officers may force open a locked door on the premises if they have probable cause to believe the objects sought are behind it. *See United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982) ("A lawful search of fixed premises [pursuant to a valid warrant] ... is not limited by the possibility that separate acts of entry or opening may be required to complete the search."); *Simons v. Montgomery County Police Officers,* 762 F.2d 30, 33 (4th Cir.1985)

(warrant to search house authorized officers to enter a locked room), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).

 The officers' authority to search premises described in a warrant is not unbounded. If, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect. *See Garrison,* 480 U.S. at 86–87, 107 S.Ct. at 1017–18. Factors that indicate a separate residence include separate access from the outside, separate doorbells, and separate mailboxes. *See United States v. Ayers,* 924 F.2d 1468, 1480 (9th Cir.1991); *United States v. Hinds,* 856 F.2d 438, 441–42 (1st Cir.1988).

 Geoffrey concedes that the warrant to search 11–A Malcolm Court was valid. He argues, however, that the warrant did not authorize the agents to search his bedroom because they knew that it was a separate residence. This argument is unconvincing. The FBI agents had no reason to believe that Geoffrey's room was a separate residence: it had neither its own access from the outside, its own doorbell, nor its own mailbox. Mrs. Kyles's statement that Geoffrey was the only person with a key to the room did not, by itself, elevate the bedroom to the status of a separate residential unit. Because the bedroom was not a separate residence, the agents had probable cause to believe that the room contained evidence of the bank robbery.

Accordingly, the agents were authorized to break the lock and search the room, and the district judge properly admitted the evidence found inside.

## II. *The Voir Dire*

Basil contends that the district judge committed reversible error on *voir dire* by not asking Basil's proposed questions about racial prejudice. We disagree.

 Generally, a trial judge has broad discretion whether to pose a defendant's requested *voir dire* questions. *See Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931). *See generally* Fed.R.Crim.P. 24(a) (court may permit addi-

tional *voir dire* questions it deems proper). In certain circumstances, however, the judge must ask the prospective jurors if they will prejudge the defendant because of his race. *See Rosales–Lopez v. United States,* 451 U.S. 182, 190, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22 (1981) (plurality opinion).

 The Sixth Amendment right to an impartial jury requires a trial judge to inquire into racial bias on *voir dire* when the defendant requests the inquiry and there are "substantial indications" that racial or ethnic prejudice will likely affect the jurors. *See id.* That the case involves a clash between a black defendant and a white victim does not, by itself, compel the inquiry. *Id.* (citing *Ristaino v. Ross,* 424 U.S. 589, 596, 597, 96 S.Ct. 1017, 1021, 1021–22, 47 L.Ed.2d 258 (1976)). More is required. Because Basil has presented no "substantial indications" that bias would likely affect his jury, he has not shown a Sixth Amendment violation.

 Quite apart from the Sixth Amendment's requirements, the Supreme Court, in its supervisory capacity over the federal judiciary, has stated that a federal trial judge should usually grant a criminal defendant's request to inquire into racial bias, in order to dispel any appearance of injustice. *See Rosales–Lopez,* 451 U.S. at 191–92, 101 S.Ct. at 1635–36; *Ristaino,* 424 U.S. at 597 n. 9, 96 S.Ct. at 1022 n. 9 ("[T]he wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant."). Refusal to honor the defendant's request is not reversible error, however, unless "the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury." *Rosales–Lopez,* 451 U.S. at 191, 101 S.Ct. at 1636.

The Supreme Court has stated that a reasonable possibility of racial or ethnic bias exists when the defendant is "accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups." *Id.* at 192, 101 S.Ct. at 1636. *See Mu'Min v. Virginia,* 500 U.S. 415, 424, 111 S.Ct. 1899, 1904–05, 114 L.Ed.2d 493 (1991) ("the possibility of racial prejudice against a black defendant charged with a

violent crime against a white person is sufficiently real" to require that the district court inquire into racial prejudice on *voir dire*).

■ Since Basil is black, requested *voir dire* on potential racial bias, and contends that he was accused of a violent crime against white victims, it might appear that he was entitled to *voir dire* on that issue. The inquiry is not that simple, however, because it is by no means clear what crimes are "violent" for purposes of *Rosales–Lopez. Cf. Rosales–Lopez*, 451 U.S. at 194–95, 101 S.Ct. at 1637–38 (Rehnquist, J., concurring) ("[K]nowing the contentiousness of our profession, the suggestion that a precise definition of 'violent crime' . . . will ever be arrived at leaves me unwilling to lay down the flat rule . . . proposed.").

*Rosales–Lopez* did not have to limn the contours of "violent crime," finding with ease that the defendant there was accused of a nonviolent and victimless crime. *Id.* at 192, 101 S.Ct. at 1636. *Rosales–Lopez* did indicate, however, that it extracted the mandatory rule from *Ristaino* and *Aldridge. See id.* ("*Aldridge* and *Ristaino* together, fairly imply that federal trial courts must make such an inquiry. . . ."). Thus, we are led to *Aldridge* and *Ristaino* for guidance.

In *Aldridge*, a black defendant was accused of murdering a white police officer. *See* 283 U.S. at 309, 51 S.Ct. at 471. In *Ristaino*, a black defendant was charged with the armed robbery, assault, and battery (with intent to kill) of a white security guard. *See* 424 U.S. at 590, 96 S.Ct. at 1018. The circumstances here do not approach the level of violence found in either *Aldridge* or *Ristaino*.

First, while the bank tellers were, in some sense, "victims" of the robbery, they suffered no physical or proprietary injury. The robbers completed the crime without injuring or even attempting to injure anyone. Indeed, the only party who suffered tangible harm was the bank, which does not fill a victim's role in a scenario of interracial violence.

Basil has not cited, and our research has not unearthed, any case reversing a conviction because the trial court failed to make the mandatory *Rosales–Lopez* inquiry. In fact, where a defendant committed a violent interracial crime, but did not cause his victims serious physical injury, the Fifth Circuit affirmed the decision not to pursue the bias issue on *voir dire. See United States v. Greer*, 939 F.2d 1076, 1084 (5th Cir.1991) (no error in refusing to question prospective jurors about bias in federal trial of white supremacists charged with vandalizing Jewish temple and assaulting nonwhites in public park), *aff'd and opinion reinstated on reh'g en banc*, 968 F.2d 433 (5th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1390, 122 L.Ed.2d 764 (1993).

We are aware, of course, that armed robbery is considered a "violent crime" in other contexts. Under the Sentencing Guidelines, for example, robbery qualifies as a violent crime. *See* U.S.S.G. § 4B1.2 application note 2. Thus, a defendant who commits a robbery may be sentenced as a career offender, *see id.* § 4B1.1, and may not receive a downward departure for diminished capacity, *see id.* § 5K2.13. In addition, at least one district court has stayed the execution of a writ of habeas corpus pending appeal because the defendant was convicted of robbery and thus posed a substantial risk of danger to the community. *See Hakeem v. Beyer*, 774 F.Supp. 276, 298 (D.N.J.1991) ("Armed robbery is a crime of extreme violence, regardless of the fact that no innocents were injured. . . ."), *writ of habeas corpus vacated, and remanded*, 990 F.2d 750 (3d Cir.1993).

Our holding contradicts neither the Guidelines nor *Hakeem*, as the purpose of our inquiry differs from theirs. *Rosales–Lopez* sets violent, interracial crimes apart from others because they are more likely to stir racial prejudice in the jurors. *See Turner v. Murray*, 476 U.S. 28, 36 n. 8, 106 S.Ct. 1683, 1688 n. 8, 90 L.Ed.2d 27 (1986) (plurality) ("[I]t is plain that there is some risk of racial prejudice influencing a jury whenever there is a crime involving interracial violence. . . ."). The focus in *Rosales–Lopez* is not on what the defendant did, but on how a jury will react to the evidence against the defendant. The crime charged here did not rise to the level of violence that would likely ignite a jury's potential prejudices. Thus,

while the wiser course would have been for the district judge to ask the prospective jurors about racial bias, as requested, *see Ristaino,* 424 U.S. at 597 n. 9, 96 S.Ct. at 1022 n. 9, we are convinced that his refusal to do so was not reversible error. There was no "reasonable possibility" that the jury might be affected by bias.

### III. · *The Confrontation Clause*

Basil believes that the district judge abused his discretion by denying Basil's motion to sever his trial from Geoffrey's because even the redacted version of Geoffrey's statement to the agents implicated Basil. Alternatively, Basil argues that the district judge erred by not declaring a mistrial after Geoffrey's unredacted statement was mistakenly introduced. We reject both arguments.

■ The confrontation clause of the Sixth Amendment guarantees a criminal defendant the right to cross-examine the witnesses against him. *See, e.g., Pointer v. Texas,* 380 U.S. 400, 406–07, 85 S.Ct. 1065, 1069–70, 13 L.Ed.2d 923 (1965). The defendant's interest in cross-examination is heightened when the witness is an accomplice whose testimony could implicate the defendant as a fellow malefactor. *See Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986).

■ A defendant's right to cross-examine an accomplice who incriminates him may be frustrated when the defendant and accomplice are tried jointly. If the accomplice has confessed to the police that he and the defendant committed the crime together, that confession is admissible against the declarant as an admission, *see* Fed.R.Evid. 801(d)(2), but is generally inadmissible hearsay as to the nondeclarant. Thus, unless the nondeclarant defendant has an· opportunity at trial to cross-examine the declarant, the part of the statement incriminating the nondeclarant may not be admitted at the joint trial. *See Cruz v. New York,* 481 U.S. 186, 193, 107 S.Ct. 1714, 1719, 95 L.Ed.2d 162 (1987); *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622–23, 20 L.Ed.2d 476 (1968). The confrontation problem may be obviated, however, by redacting the statement so that it no longer connects the nondeclarant defendant to the crimes charged. *See United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990).

■ Basil argues that the district judge should have severed the trials, instead of merely redacting Geoffrey's confession, because the redacted version still implicated Basil as the other bank robber. We do not agree. The statement as redacted—"he got me into this, these bank robberies"—in no way connects Basil to the robbery. True, the jury might have inferred from other evidence that "he" meant "Basil." Nevertheless, a redacted confession runs afoul of *Bruton* only if it, "standing alone, would clearly inculpate [the nondeclarant] without introduction of further independent evidence." *United States v. Wilkinson,* 754 F.2d 1427, 1435 (2d Cir.) (citation omitted), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). Because the redaction effectively removed all manifest references to Basil from the statement, it sufficiently avoided the confrontation clause problem.

■ Finally, Basil argues that his right to cross-examine his accusers was violated when Agent Teahan testified to Geoffrey's unredacted statement, and thus the district judge should have declared a mistrial. We accept Basil's premise, but not his conclusion.

Agent Teahan's blundering repetition of Geoffrey's statement to the jury unquestionably violated Basil's Sixth Amendment rights because it incriminated Basil without affording him an opportunity to cross-examine Geoffrey, who was privileged not to testify. Further, the district judge's attempt to neutralize the Sixth Amendment violation by instructing the jury to disregard Teahan's testimony was ineffective because limiting instructions do not cure the prejudice that such violations may cause to a defendant. *See Bruton,* 391 U.S. at 135–36, 88 S.Ct. at 1627–28. Thus, we agree that Basil's right to cross-examine his accuser was violated.

This does not end our inquiry, however. A confrontation clause violation does not mandate reversal where "the properly admitted evidence of guilt is so overwhelming, and the

prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). Thus, in cases in which the government demonstrates that the other, properly admitted evidence sufficiently proves the elements of the crime for which the defendant was convicted, and there is no reasonable probability that the *Bruton* violation infected the verdict, we have affirmed the conviction despite the confrontation clause violation. *See Samuels v. Mann,* 13 F.3d 522, 528 (2d Cir.1993), *cert. denied,* — U.S. —, 115 S.Ct. 145, 130 L.Ed.2d 85 (1994). *Cf. Holland v. Scully,* 797 F.2d 57, 67 (2d Cir.1986) (error not harmless where proper evidence was either contradicted or only went to the elements of lesser crimes), *cert. denied,* 479 U.S. 870, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986).

We find that admission of the statement was harmless error. True, Geoffrey's confession did incriminate Basil; however, the prejudicial effect of the confession was insignificant in light of the overwhelming evidence presented at trial against Basil. The government showed that Basil reeked of tear gas when he was arrested, and his pants, shirt, and hands were stained with red dye. This same dye covered the interiors of both getaway cars, as well as the ski masks and stolen bills found in the cars. The government also showed that an envelope full of stolen bills, found in Geoffrey's room, had Basil's name on it. And, a witness to the getaway testified that one of the robbers looked like Basil. In addition, the government showed that Basil had access to one of the getaway cars: it belonged to his girlfriend, whom he saw the night before the robbery, and an employment application bearing Basil's name and address was found in the back seat.

This massive evidence of guilt proved beyond a reasonable doubt that Basil was one of the bank robbers. The erroneous repetition of Geoffrey's unredacted statement was an insignificant contribution to the outcome of the trial. Accordingly, we find that the *Bruton* violation caused thereby was harmless error.

## CONCLUSION

We have considered the defendants' remaining arguments and find them without merit. We, therefore, affirm the judgments of conviction entered by the district court.

AFFIRMED.