**Ciprian ORTEGA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**95 Civ. 3801 (PKL).**

United States District Court, S.D. New York.

Sept. 5, 1995.

Ciprian Ortega, Loretto, PA, pro se.

Mary Jo White, United States Attorney, Southern District of New York, New York

City (Andrew S. Dember, of counsel), for respondent.

LEISURE, District Judge:

This is a *pro se* petition, pursuant to 28 U.S.C. § 2255, seeking to set aside petitioner's sentence, entered upon a plea of guilty. Petitioner is Ciprian Ortega ("Ortega"). Respondent is the United States of America (the "Government"). This Court sentenced Ortega to 37 months imprisonment for conspiracy to commit robbery. Ortega claims that his sentence should be set aside because (1) his conviction was obtained by the use of evidence gained from an unconstitutional search and seizure; (2) his Fifth Amendment Right to remain silent during custodial interrogation was violated; (3) the court improperly denied his motion for a severance; (4) the Court erroneously denied his motion to suppress a suggestive photographic identification thereby violating his due process rights; (5) the Government should have disclosed the identity of the confidential informant in petitioner's case; (6) he was deprived of effective assistance of counsel due to "legal documentation and other issues of fact;" and (7) the Court incorrectly calculated his offense level in determining the applicable sentencing range. For the reasons set forth below, petitioner's request is denied.

### BACKGROUND

On December 1, 1993, an individual arrested for failure to appear in New York State Supreme Court on a robbery indictment, became a first-time confidential informant ("CI") regarding a robbery planned for later that day. He provided the agents of the FBI/NYPD Joint Robbery Apprehension Task Force (the "agents") with the following details:

The CI was conspiring with five individuals to rob a supermarket owner's residence in the Washington Heights section of Manhattan of approximately $150,000. The CI named three of his co-conspirators as Antonio Acosta a/k/a "Roberto," Edgar Foy a/k/a "Eddie," Jose Torres a/k/a/ "Ecedro" or "Isidro." *See* Government's Memorandum of Law in Opposition to Petitioner's § 2255 Petition ("Govt's Mem.") at 3; Petitioner's Notice of Motion pursuant to 28 U.S.C. § 2255 to Set Aside Sentence ("Petitioner's Mot."), at 1.

The participants were to travel to the crime location in an older model, yellow Toyota station wagon and were to have two walkie-talkie radios and two automatic firearms, to be concealed inside the car behind a panel on the rear, driver's side. The weapons were to remain concealed until the robbery, to avoid the possibility of capture by the police on the street in possession of firearms. *See* Govt's Mem. at 3.

The CI asserted that he could identify the victim's apartment building and that he believed the residence to be located on Fort Washington Avenue in the vicinity of 182nd Street. *See* Govt's Mem. at 3–4. He further stated that the conspirators planned to await the arrival of the victim's wife and children, retrieve the firearms from their vehicles, pursue the victim's family into the apartment, and force the wife to surrender the money. *See* Govt's Mem. at 4.

At the agents' request, the CI then engaged in a consensually recorded telephone call with Ecedro, *see* Govt's Mem. at 4 (or Roberto, *see* Petitioner's Mot. at 3), who confirmed that the robbery was to be carried out that day. When the CI informed Ecedro that he would not be available to participate in the robbery, Ecedro indicated that he and his other co-conspirators would look for another person to take the CI's place. *See* Govt's Mem. at 4.

Thereafter, the agents proceeded with the CI to the situs of the intended robbery, and established surveillance positions. They observed five men on the street, as well as a 1980 yellow Toyota station wagon and a 1981 green Buick parked closely together. *See* Govt's Mem. at 5. The agents observed the five men entering and exiting the vehicles. *See id.* at 5. The men were also observed looking about the area, repeatedly talking amongst themselves and then separating from one another, and "otherwise acting suspiciously." *Id.* at 5.

The CI identified Edgar Foy as "Eddie," Jose Torres as "Ecedro," and Antonio Acosta as "Roberto." He identified the other two

men as petitioner and Ramon Rivera. *See id.* at 5. The CI also identified the yellow station wagon as the vehicle he previously had described and the 1981 Buick as the car he previously had seen "Eddie" drive and use in past robberies. *See id.* at 5. The CI informed the agents that the Buick belonged to petitioner and that the yellow station wagon belonged to Jose Torres. *See* Petitioner's Mot. at 4.

During the surveillance, Ortega and Rivera were seen exiting and entering the Buick. *See* Govt's Mem. at 5. At one point during the surveillance, another agent observed Ortega and his co-defendants Acosta, Foy, and Torres conversing at the corner of 183rd Street and Fort Washington Avenue. *Id.* at 5.

Ortega claims that he was present at the scene only in his capacity as a car service driver and that he had received a call at 1:30 p.m. to drive defendant Ramon Rivera round-trip from 309 Tremont Avenue in the Bronx, to 183 Fort Washington Avenue. *See* Petitioner's Mot. at 7–8, and Exhs. A, B.

After approximately 20 minutes of surveillance, the agents decided to detain defendants prior to the arrival of the victim's wife and children, so as not to endanger them. *See* Govt's Mem. at 5–6. The agents believed that they had probable cause to arrest defendants. *See id.* at 5.

Defendants were then confronted at gunpoint, detained, and searched. *See* Govt's Mem. at 6; Petitioner's Mot. at 8. The agents recovered car keys from defendants Torres and Ortega and two walkie-talkies from Foy. *See* Govt's Mem. at 6. Petitioner claims that the keys were not retrieved from his person, but rather were taken from the ignition of the car. *See* Petitioner's Mot. at 8. Torres' key matched the Toyota, and Ortega's key matched the Buick. *See* Govt's Mem. at 6. The agents recovered nylon stockings and two semi-automatic firearms from the Toyota, concealed behind the panel in the rear, driver's side. *See id.* at 6. They also recovered a .38 caliber revolver from a hidden compartment inside the dashboard of the 1981 Buick. *See id.* at 6.

Information obtained from the New York State Department of Motor Vehicles provided that the yellow Toyota was registered to an Argeli Perez and the Buick was registered to a Jose Guzman. *See id.* at 6.

In post-arrest statements, Ortega stated that the Buick belonged to him. *See* Petitioner's Mot. at 5. However, he stated that he did not know any of the other defendants, except that he was acquainted with "Roberto." *See id.* at 5. He further stated that he did not know why the .38 caliber firearm was in his car. *Id.*

In his post-arrest statement, defendant Rivera told agents that he was picked up that day by his friend Ortega who was driving the Buick. *See* Petitioner's Mot. at 5. He contended that Ortega stopped the car for an unknown reason near the vicinity where they were arrested, and he denied knowing any of the other defendants or why the .38 caliber firearm was found in Ortega's car. *See id.* at 5.

In post-arrest statements, Edgar Foy stated, *inter alia*, that he knew that defendant Torres was planning a robbery, that defendant Rivera had previously committed many similar robberies, and that "Roberto" had contacted Foy and told him that another person was needed to commit the robbery. *See* Petitioner's Mot. at 6.

On December 16, 1993, an indictment was filed against petitioner Ciprian Ortega and his co-defendants Acosta, Foy, Rivera, and Torres. *See* Indictment, *United States of America v. Acosta, et al.,* 93 Cr. 1074 (PKL) (the "Indictment"). Counts One and Two of the Indictment charged all five defendants with conspiracy to commit robbery in violation of 18 U.S.C. § 1951 and with using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Count Three charged Ciprian Ortega with possession of a firearm having been convicted of a crime punishable by imprisonment for a term exceeding one year. Count Four charged defendant Jose Torres with possession of a firearm having been convicted of a crime punishable by imprisonment for a term exceeding one year.

Following arraignment on the Indictment, petitioner filed pretrial motions, and the Government submitted its response. At a conference before this Court on April 25, 1994, oral argument was heard on these motions. The Court, finding probable cause for petitioner's arrest and the search of the automobile, denied Ortega's motion to suppress the physical evidence seized from the automobile. The Court also denied Ortega's motion requesting a severance, the disclosure of the identity of the CI, and a bill of particulars. During this conference, Ortega withdrew his motion to suppress his post-arrest statement on the grounds that it was the product of an unlawful arrest and that he had invoked his right to remain silent prior to the Court rendering its ruling. Regarding Ortega's motion to suppress identification evidence resulting from an identification procedure, the Court ruled that if identification became an issue at trial, a hearing would be held to assess whether any identification evidence was unduly and impermissibly suggestive. *See* Govt's Mem. at 8.

On May 10, 1994, prior to the commencement of the trial, Ortega entered an unconditional plea of guilty to Count One of the Indictment, charging him with conspiracy to commit robbery. Prior to the guilty plea, Ortega and the Government entered into a plea agreement, which contained various stipulations regarding the calculation of petitioner's offense level, criminal history category, and guidelines sentencing range. *See* Govt's Mem. at 8–9.[1] They also agreed that neither party would appeal a sentence by the Court that fell within the stipulated sentencing range. *See* Govt's Mem. at 9.

On July 8, 1994, this Court sentenced Ortega to 37 months imprisonment, followed by three years of supervised release, and a mandatory special assessment. The sentence was based on a sentencing range of 37 to 46 months, the agreed upon range in the

plea agreement. Ortega did not appeal his conviction or sentence. *See* Govt's Mem. at 9.

On February 5, 1995, Ortega moved for an order pursuant to 28 U.S.C. § 2255 to set aside his sentence. The Government opposes petitioner's motion.

### DISCUSSION

#### I. Plaintiff Has Waived the Right to Challenge this Court's Disposition of His Pretrial Motions.

 Petitioner requests that his sentence be set aside since his pretrial motions 1) to suppress physical evidence, identification evidence and his post-arrest statements; 2) to disclose the identity of the CI; and 3) to sever his case from that of his co-defendants were improperly decided. Petitioner's request is seemingly proper under 28 U.S.C. § 2255, which provides that a prisoner may request that his sentence be set aside "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the amount imposed by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255. However, when petitioner pleaded guilty to Count One of the Indictment, he waived the right to assert these claims.

 It is well settled that when a criminal defendant knowingly and voluntarily pleads guilty, he admits to all of the elements of the formal criminal charge. *See McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.1987). The criminal defendant also waives all challenges to the prosecution and all defects in the prior proceedings, except those going to the court's jurisdiction. *See Hayle* 815 F.2d at 881; *see also United*

---

**1.** Petitioner and the Government stipulated that the applicable sentencing range was 37–46 months, based on an offense level of 21 and a criminal history of I. The parties stipulated to a base offense level of 20; a 5–level enhancement for possession of firearms during the course of the robbery conspiracy; a 2–level enhancement as a result of the intended loss exceeding $50,000

but being less than $250,000; a 2–level reduction for acceptance of responsibility; and a 4–level reduction for being a minimal participant in the robbery conspiracy. The parties also stipulated that petitioner's criminal history consisted of one criminal conviction resulting in one criminal history point. *See* Govt's Mem. at 9 n. 2.

States v. Rios, 893 F.2d 479, 481 (2d Cir. 1990) (*per curiam*); *LaMagna v. United States*, 646 F.2d 775, 778 (2d Cir.1981), *cert. denied*, 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *Lebowitz v. United States*, 877 F.2d 207, 209 (2d Cir.1989). Thus, a defendant who has pleaded guilty may not raise nonjurisdictional challenges by collateral attack under § 2255. *See United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *Hayle*, 815 F.2d at 881; *LaMagna*, 646 F.2d at 778.

Although petitioner alleges that his attorney advised him to plead guilty or face 15 years in prison, *see* Ortega's § 2255 Petition ("Petition"), at 1, it is undisputed that at the time of his guilty plea, Ortega waived his constitutional rights, acknowledged that his plea was voluntary and of his own free will, and admitted to his role in the crime. *See* Govt's Mem. at 10–11. Since petitioner's claims do not challenge the Court's jurisdiction, they are waived by his guilty plea, which did not include a court-approved reservation of those claims. *See Lebowitz*, 877 F.2d at 209.

Ortega's motions to suppress evidence, to compel disclosure of the identity of the CI, and to sever his case from that of his codefendants are not jurisdictional in nature, and therefore, by pleading guilty, Ortega waived his rights to reexamine the Court's decisions with respect to these motions.

However, even if the Court reexamines the merits of these motions, Ortega's claims still must fail.

## A. Ortega's Arrest Was Supported by Probable Cause.

Petitioner claims that the law enforcement agents lacked probable cause to arrest him, and that any evidence obtained from his person or car resulted from an illegal search and seizure, in violation of the Fourth Amendment of the Constitution.

The Fourth Amendment secures persons and their effects against unreasonable searches and seizures, and requires the existence of probable cause before a warrant shall issue. A warrantless arrest is justified if the police have probable cause when the defendant is arrested to believe that an offense has been or is being committed. *See United States v. Cruz*, 834 F.2d 47, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988); *United States v. Fox*, 788 F.2d 905, 907 (2d Cir. 1986).

Probable cause is a flexible, common-sense standard. *See Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). It merely requires that the facts available to the officers would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful evidence of a crime. *See Brown*, 460 U.S. at 742, 103 S.Ct. at 1543; *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). Probable cause requires "only a probability or substantial chance of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). One need not even show that such a belief is correct or more likely true than false. *See Brown*, 460 U.S. at 742, 103 S.Ct. at 1543. The determination of whether probable cause exists may be based on the collective knowledge of all of the officers involved in the surveillance where the various law enforcement officers are in communication with each other. *See Cruz*, 834 F.2d at 51.

A finding of probable cause turns on the facts of each case. *See Gates*, 462 U.S. at 232, 103 S.Ct. at 2329; *Cruz*, 834 F.2d at 50. The Court must examine the "totality of the circumstances," *see United States v. Moreno*, 897 F.2d 26, 31 (2d Cir.), *cert. denied*, 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990), as viewed by someone experienced in the field of law enforcement. *See Brown*, 460 U.S. at 742, 103 S.Ct. at 1543.

Additionally, a criminal participant or witness to a crime "need *not* be shown to have been previously reliable before the authorities may rely on his statements." *See United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir.1986), *cert. denied*, 481 U.S. 1031, 107 S.Ct. 1960, 95 L.Ed.2d 531 (1987) (quoting *United States v. Rueda*, 549 F.2d 865, 869

(2d Cir.1977) (emphasis in original). "[E]vidence sufficient to show probable cause by corroborating even a previously unknown informant may be found in circumstances which do not actually establish the crime itself." *Gaviria,* 805 F.2d at 1115, (quoting *Rueda,* 549 F.2d at 870); *see United States v. Sultan,* 463 F.2d 1066, 1069 (2d Cir.1972). Even if a defendant's conduct may appear innocent on its face, probable cause may still be established since the probable cause standard " 'does not deal with hard certainties, but with probabilities.' " *Gates,* 462 U.S. at 231, 103 S.Ct. at 2328 (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); *see Gaviria,* 805 F.2d at 1115.

█ Here, the agents properly relied on the CI's statements, and when the statements were combined with other corroborative facts, the agents had probable cause to arrest Ortega. Although it is of little significance that the CI was a first-time informant, it is noteworthy that he was not merely an informant, but was involved in orchestrating the crime. *See Gaviria,* 805 F.2d at 1115. The CI provided the agents with detailed information about the execution of the intended robbery and about the victims. His statements were corroborated by his phone call to Ecedro, and significantly, Ecedro indicated that another person would take the CI's place in the robbery.

The CI's testimony was further corroborated by the surveillance mission. The CI accompanied the agents to the intended crime scene, where he identified "Eddie," "Ecedro," and "Roberto." The yellow Toyota matched the description of the car which was to be used in the robbery, and which he said would contain weapons. Furthermore, he identified the green Buick as a vehicle he had seen used in past robberies and one in which he had previously seen a firearm.

Ortega was observed conversing with his co-defendants at the corner of 183rd Street and Fort Washington Avenue. *See* Govt's Mem. at 15. The agents observed defendants looking around, repeatedly talking together and separating, and otherwise acting suspiciously. *See* Govt's Mem. at 14.

Thus, the CI's information, corroborated by the phone call to Ecedro and the events at the scene, as viewed by experienced law enforcement officers, reasonably support the agents' conclusion that Ortega was one of the co-conspirators recruited to replace the CI in a pending offense. Under the totality of the circumstances, the Court finds that sufficient objective evidence existed to find that Ortega was involved in criminal activity, and that the agents were justified in arresting him.

**B. The Agents Lawfully Searched the 1981 Buick.**

█ Ortega also claims that the Court should have suppressed the physical evidence, specifically the handgun recovered from the Buick, *see* Petitioner's Mot. at 9–10, since the agents lacked probable cause to conduct a warrantless search of the vehicle. "[A] defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla,* — U.S. —, —, 113 S.Ct. 1936, 1939, 123 L.Ed.2d 635 (1993) *(per curiam )* (emphasis in original). Thus, to contest a search, a defendant must have a legitimate expectation of privacy in the thing that was searched. *See United States v. Tropiano,* 50 F.3d 157, 161 (2d Cir.1995). To determine whether petitioner's Fourth Amendment rights were violated, "[f]irst, the person challenging the search must demonstrate a subjective desire to keep his or her effects private; and, second, the individual's subjective expectation must be one that society accepts as reasonable." *United States v. Paulino,* 850 F.2d 93, 97 (2d Cir.1988), *cert. denied,* 490 U.S. 1052, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989) (citing *California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988)).

The defendant seeking suppression bears the burden of proving a privacy interest in an automobile. *See United States v. Pena,* 961 F.2d 333, 336 (2d Cir.1992). To prove this privacy interest, it is not necessary that defendant own the vehicle. *See id.* at 337. Instead, defendant must show, among other things, a legitimate basis for being in the

vehicle, such as permission from the owner. *See id.* at 337; *United States v. Ochs,* 595 F.2d 1247, 1253 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). "Defendants who do not have a legitimate basis for being in a car that is not registered in the name of any of the car's occupants cannot object to the search of the vehicle." *United States v. Ponce,* 947 F.2d 646, 649 (2d Cir.1991), *cert. denied,* 503 U.S. 943, 112 S.Ct. 1492, 117 L.Ed.2d 633 (1992). Even if a defendant can establish a privacy interest in an automobile, he must still have a reasonable expectation of privacy in the area of the vehicle searched. *See Pena,* 961 F.2d at 337.

Petitioner has failed to establish a Fourth Amendment interest in the Buick, as he did not submit an affidavit in support of his claimed privacy interest, and he failed to demonstrate either ownership in the car, or license from the owner to possess the car. *See United States v. Sanchez,* 635 F.2d 47, 64 (2d Cir.1980). The registered owner of the car is Jose Guzman. Even the records which Ortega submitted from his car service employer failed to identify any relation between the Buick's registered owner and the car service. Ironically, petitioner further indicates his lack of a privacy interest in the car by emphasizing that he did not even possess the keys to the car, but claims that they were found in the ignition. *See* Petitioner's Mot. at 8. Petitioner has failed to show that he had the requisite privacy interest in the 1981 Buick.

Even if petitioner had established a privacy interest in the Buick, the automobile exception to the Fourth Amendment warrant requirement permits a warrantless search of an automobile when the police have probable cause to believe that the vehicle contains contraband or evidence of criminal activity. *See Carroll,* 267 U.S. at 149, 45 S.Ct. at 283; *Pena,* 961 F.2d at 338. If the probable cause extends to the entire vehicle, the agent may conduct a warrantless search "of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982). The CI's information, corroborated by the events at the crime scene provided the agents with probable cause to search the automobile.

Thus, petitioner has failed to establish a legitimate Fourth Amendment entitlement to the 1981 Buick, and does not possess a privacy interest in the hidden compartment inside the dashboard where the .38 caliber revolver was found. The agents had probable cause to conduct a warrantless search of the vehicle. Accordingly, Ortega's motion to suppress evidence seized from the vehicle was properly denied.

**C. The Court Properly Denied Ortega's Motion for A Severance.**

■ Petitioner contends that the Court improperly denied his motion for a severance from his co-defendants, specifically Rivera and Foy. Ortega moved for a severance on the grounds that admission of Rivera's redacted post-arrest statement would have violated his rights under the Confrontation Clause since the statement directly implicates Ortega's car and intimates Ortega's possession of the gun. *See* Petitioner's Mot. at 10–11; Govt's Mem. at 21. Ortega argues that even though the statement was redacted to delete names, a jury would be able to use other evidence to determine the identity of the redacted names. *See* Govt's Mem. at 21. Additionally, he claims that a joint trial would have precluded introduction of Foy's unredacted post-arrest statement, which he contended exculpated him, *see* Govt's Mem. at 21. Furthermore, Ortega claims spillover prejudice by Foy's statement against Rivera, in violation of his Fifth Amendment Due Process rights. *See* Petitioner's Mot. at 11.

The decision whether to sever multi-defendant trials is committed to the sound discretion of the trial court, *see United States v. Lasanta,* 978 F.2d 1300, 1306 (2d Cir.1992), and the defendant alleging such prejudice bears a heavy burden. *See United States v. Locascio,* 6 F.3d 924, 947 (2d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994).

The Confrontation Clause of the 6th Amendment guarantees a criminal defendant the right to cross-examine the witnesses against him, *see United States v. Kyles,* 40 F.3d 519, 526 (2d Cir.1994), and this interest

in cross-examination is heightened when the witness is an accomplice whose testimony could implicate the defendant as a fellow wrongdoer. *See id.* at 526. A defendant's right to cross-examine an accomplice who incriminates the defendant may be frustrated when they are tried jointly. *See id.* at 526. If the accomplice has confessed that he and the defendant committed the crime together, that confession is admissible against the declarant as an admission, *see* Fed.R.Evid. 801(d)(2), but is generally inadmissible hearsay as to the nondeclarant. *See Kyles,* 40 F.3d at 526. Thus, unless the nondeclarant defendant has the opportunity at trial to cross-examine the declarant, the part of the statement incriminating the nondeclarant may not be admitted at joint trial. *See id.* at 526; *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968).

However, the confrontation problem may be eliminated by redacting the statement so that it no longer connects the nondeclarant defendant to the crimes charged, by replacing the names of the co-defendants with neutral pronouns. *See Kyles,* 40 F.3d at 526; *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). A redacted statement violates a defendant's *Bruton* rights only if the statement, "standing alone, would clearly inculpate him without introduction of further independent evidence." *Tutino,* 883 F.2d at 1135 (quoting *United States v. Wilkinson,* 754 F.2d 1427, 1435 (2d Cir.), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985)). In *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court explicitly rejected a "contextual" approach, and focused instead on whether the redacted statement alone was "facially incriminating" as to the co-defendant. *Id.* at 208–09, 107 S.Ct. at 1707–08; *Tutino,* 883 F.2d at 1135. Thus, a defendant's statement implicating both himself and his co-defendants, which has been redacted to exclude the co-defendants' names, and which would be incriminating only when linked with other evidence in the case, is properly admitted into evidence, and does not violate the co-

defendants' constitutional rights. *See Tutino,* 883 F.2d at 1135.

Here, the Government proposed a redacted version of Rivera's statement that not only deleted the names of the co-defendants, but also removed any indication to the jury that any defendant identified any other individuals. *See* Govt's Mem. at 21, 23. Additionally, Rivera's statement implicating Ortega was not "incriminating on its face." *See Tutino,* 883 F.2d at 1135. It did not identify Ortega, and would only have implicated Ortega if additional independent evidence was introduced, such as law enforcement observations at the crime scene, the testimony of a co-conspirator, and other physical evidence such as the gun recovered from the 1981 Buick.

Since the redaction of Rivera's statement effectively removed all manifest references to Ortega from the statement, and was not incriminating on its face, it did not infringe on Ortega's rights under the Confrontation Clause, and was properly admitted into evidence.

Petitioner also contends that a joint trial would have prevented his use of Foy's unredacted statement, which he claims exculpated him, since it did not name petitioner along with the four co-defendants. *See* Govt's Mem. at 25. Petitioner's claim lacks merit since Foy's statement would have been inadmissible hearsay, in violation of Fed.R.Evid. 801, and could not be introduced in a separate trial. The statement was an out of court declaration offered by Ortega to prove the truth of the matters asserted, namely to prove that the conspirators consisted of the four co-defendants and not Ortega. *See* Govt's Mem. at 25. Since the statement did not fall within any of the hearsay exceptions, the Court properly denied severance based on this ground.

Finally, to prevail on his claim of spillover prejudice, based on Foy's statement against Rivera, petitioner must show that he was so severely prejudiced by the spillover evidence that a joint trial will constitute a miscarriage of justice. *See Lasanta,* 978 F.2d at 1306. Ortega has failed to meet this burden. He has not specified any statements made by Foy which are so prejudicial against defen-

dant that their use would result in an injustice.

Accordingly, for the reasons set forth above, and in the interests of judicial economy, Ortega's motion for a severance was properly denied.

### D. The Court Properly Denied Ortega's Motion to Disclose the Identity of the Confidential Informant.

■ Petitioner claims that the Government should be compelled to disclose the identity of the CI, "to prove that petitioner is the person he states he saw" in the conspiracy. *See* Petition at 5. It is within the Court's discretion to decide whether to compel disclosure of an informant's identity. *See DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir.1991). The Court should consider the particular circumstances of each case, taking into consideration "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.1988), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989).

The Government's privilege to withhold the identity of a confidential informant gives way "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957); *DiBlasio*, 932 F.2d at 1041. The informant's identity need not be disclosed unless disclosure is "material" or "essential" to the defense, *see Saa*, 859 F.2d at 1073; *Scher v. United States*, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938), as occurs where the informant "is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir.1984). However, if disclosure of the informant's identity would only be marginally valuable to the defendant's case, then it is insufficient to show that the informant was a participant and witness to the crime charged. *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir.1986). The burden is on the defendant to demonstrate the need for the extraordinary remedy of disclosure. *See United States v. Long*, 697 F.Supp. 651, 663 (S.D.N.Y.1988).

Ortega has failed to satisfy his burden of establishing that disclosure of the CI's identity is material to *his* defense. The CI's testimony is essential to the Government's position, not the defense, and the Government asserts that the CI would have taken the stand in the Government's case, where petitioner would have had ample opportunity to cross-examine him. *See* Govt's Mem. at 28. The bulk of the CI's testimony related to events prior to the crime, in which he did not even implicate Ortega. Furthermore, since Ortega's activities at the crime scene were also witnessed by law enforcement agents, the CI is not a key witness to the events. The CI merely identified Ortega, his co-defendants, and the vehicles involved. Ortega has not demonstrated that disclosure of the CI's identity will prove his innocence. Petitioner has presented no evidence to support his claim that the CI had a motive falsely to accuse petitioner of participation in the conspiracy. *See* Petition at 5. In any event, a challenge to an informant's credibility is "normally an insufficient basis to overcome the informant's privilege." *Russotti*, 746 F.2d at 950.

Thus, since Ortega has failed to establish that the disclosure of the CI's identity is material to his defense, petitioner's motion was properly denied.

### E. Ortega's Claims Regarding His Motion to Suppress and His Post-arrest Statement Lack Merit.

Ortega contends that the Court erroneously denied his motions to suppress his post-arrest statement and the identification evidence. Ortega's claims lack merit. In fact, since Ortega withdrew his motion to suppress his post-arrest statement at the April 25, 1994 conference, the Court never ruled on this motion. In any event, since there was probable cause to arrest Ortega, his post-arrest statements were properly admitted into evidence, and his motion to suppress his post-arrest statements would properly have

been denied. *See Cruz,* 834 F.2d at 52; *Gaviria,* 805 F.2d at 1115–1116.

Furthermore, at the same conference, the Court ruled that if identification became an issue at trial, it would conduct an evidentiary hearing to assess whether any identification evidence was unduly and impermissibly suggestive. Thus, this Court never denied Ortega's above motions, and Ortega's claims challenging the purported denial of these motions are dismissed.

## II. Petitioner's Claim of Ineffective Assistance of Counsel is Unsupported by Adequate Factual Allegations.

■ Ortega further claims ineffective assistance of counsel due to "lack of legal documentation, and other issues of fact." *See* Petition at 5. To prevail on a claim of ineffective assistance of counsel, Ortega must overcome the law's presumption that counsel's conduct was reasonable. *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Thus, petitioner "must establish that his [ ] counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. He must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Billy–Eko v. United States,* 8 F.3d 111, 117 (2d Cir.1993) (citations omitted).

Petitioner's vague assertions in the petition are insufficient to satisfy these requirements. Nowhere in his moving papers does petitioner define the "lack of legal documentation, and other issues of fact." The lack of legal documentation may refer to the motion petitioner filed on February 5, 1995 requesting his transcripts and sentencing transcripts. Petitioner referred to this motion in a letter to his former attorney, Daniel Nobel, Esq., dated March 20, 1995, again requesting this documentation so that petitioner could appeal his sentence. In the above letter, petitioner also referred to "certain issues and facts in the entire case which I know and am aware," which allegedly establish petitioner's innocence. However, these documents are utterly insufficient to clarify the obscure assertions made in petitioner's moving papers.

Petitioner's assertions in his reply papers are equally unavailing. Petitioner claims in his reply that his counsel's representation was ineffective due to:

1. Lack of legal documentation and other issues of fact;

2. Counsel made errors very serious errors, by not functioning as counsel should under the guarantee of the Sixth Amendment;

3. Counsel was prejudiced due to his unprofessional errors, the results of which would have been a different outcome of defendant's right to liberty;

4. Counsel's conduct so undermined the proper functioning of the adversary process that the proceedings due to counsel's ineffectiveness, cannot be relied on having produced a just result.

*See* Defendant's Rebuttal to Government's Reply on Opposition to Petitioner's Section § 2255 Petition at 27. These conclusory assertions are unsupported by any factual allegations and are too vague to establish that petitioner's counsel's performance fell below an objective standard of reasonableness.

Thus, petitioner has failed to establish that counsel's conduct was unreasonable, or if it was unreasonable, that he was prejudiced by it. Accordingly, Ortega's constitutional claim of ineffective assistance of counsel is hereby denied.

## III. Petitioner Fails to Establish Unresolved Factual Issues to Require an Evidentiary Hearing.

■ A petition for habeas corpus relief requires an evidentiary hearing to resolve disputed issues of fact unless the record shows that the petitioner is not entitled to relief. *See* 28 U.S.C. § 2255; *Hayden v. United States,* 814 F.2d 888, 891 (2d Cir. 1987); *Dalli v. United States,* 491 F.2d 758, 760 (2d Cir.1974). Unless supported by a sufficient affidavit, the decision whether to hold an evidentiary hearing is left to the district court's discretion. *See Newfield v. United States,* 565 F.2d 203, 207 (2d Cir. 1977). Where allegations in the petition are immaterial, conclusory and palpably false, there is no basis to conduct an evidentiary

hearing. *See Williams v. United States,* 503 F.2d 995, 998 (2d Cir.1974).

Here, petitioner has not supplied this Court with an affidavit in support of his motion. Furthermore, petitioner does not allege any facts which, if found to be true would entitle him to habeas relief. *See Ciak v. United States,* 59 F.3d 296, 307 (2d Cir. 1995). Ortega has not alleged any facts substantiating that he had a privacy interest in the 1981 Buick. Even if Ortega were to establish that at the time of the intended crime he was working for the car service, he has not established facts sufficient to indicate that he was not involved in the crime. Additionally, petitioner has failed to identify any significant inaccuracies made at the plea hearings to indicate that there is additional evidence that would merit a hearing. *See United States v. Russo,* 801 F.2d 624, 627 (2d Cir.1986).

Thus, the evidence presented was insufficient to warrant a full evidentiary hearing on petitioner's claims. Petitioner's motion to set aside his sentence based on the above grounds is denied without a further evidentiary hearing on these claims.

## IV. Petitioner Waived His Right to Challenge His Sentence, and His Claims are not Cognizable Under § 2255.

■ Ortega challenges the calculation of his offense level, claiming that the 5–level enhancement for possessing firearms during the course of the robbery conspiracy and the 2–level enhancement as a result of the intended loss of approximately $150,000 were improperly applied. However, in the plea agreement, petitioner explicitly stipulated to these sentencing enhancements, thereby waiving his right to challenge them, and he further agreed not to appeal his sentence if it fell within the stipulated range of 37 to 46 months imprisonment.

It is well settled that a knowing and voluntary waiver by a defendant of his right to challenge a sentence within an agreed sentencing guidelines range is enforceable. *United States v. Salcido–Contreras,* 990 F.2d 51, 51 (2d Cir.) (*per curiam*), *cert. denied,* —— U.S. ——, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); *United States v. Rivera,* 971 F.2d 876, 896 (2d Cir.1992). Furthermore, "[i]n no circumstance ... may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement." *Salcido–Contreras,* 990 F.2d at 53.

Petitioner knowingly and voluntarily waived his right to appeal if the sentence fell within the agreed range. Additionally, petitioner was sentenced to 37 months imprisonment, the *minimum* time period in conformity with the stipulated range. Furthermore, petitioner has benefitted by pleading guilty and stipulating to his sentence range in advance. *See Brady v. United States,* 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970) ("For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated."). He may not now challenge the merits of this sentence.

■ Even if Ortega had not waived the right to challenge his sentence, his sentence claims must be dismissed since they are not properly brought in a section 2255 petition. Not every asserted error of law can be raised on a § 2255 motion. *See Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). Section 2255 provides a remedy only for defects which are constitutional, jurisdictional, or in some other respect, fundamental. *See United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979); *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *Reilly v. Warden,* 947 F.2d 43, 44 (2d Cir.1991), *cert. denied,* 502 U.S. 1115, 112 S.Ct. 1227, 117 L.Ed.2d 462 (1992).

Ortega's claims that the Court erred in applying the enhancement levels are neither constitutional, nor jurisdictional, nor do they raise any "fundamental defect[s] which inherently result[ ] in a complete miscarriage of justice, nor an[y] omission[s] inconsistent with the rudimentary demands of fair proce-

dure." *See Hill,* 368 U.S. at 428, 82 S.Ct. at 471. Accordingly, petitioner's sentencing claims are not cognizable under § 2255, and that aspect of Ortega's petition concerning his sentencing claims is hereby dismissed.

## CONCLUSION

For the reasons stated above, petitioner's motion, pursuant to 28 U.S.C. § 2255, to set aside his sentence is hereby denied.

**SO ORDERED.**