101 F.3d 685
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
John PELLETIERE, also known as "Jay"; Defendant,
Sheri COHEN, also known as Samantha Cohen, and also known as
Sherri Cohen, and Gary Stevens, Defendants-Appellants.
 Nos. 95-1328, 95-1618.
 United States Court of Appeals, Second Circuit.
 May 29, 1996.
 
 1
 APPEARING FOR APPELLANT STEVENS: Georgia J. Hinde, New York, NY.
 
 
 2
 APPEARING FOR APPELLANT COHEN: Ronald Saffner, New York, NY.
 
 
 3
 APPEARING FOR APPELLEE: Seth L. Marvin, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY.
 
 
 4
 E.D.N.Y.
 
 
 5
 AFFIRMED.
 
 
 6
 Present: MESKILL, MINER, Circuit Judges, LASKER,* District Judge.
 
 
 7
 This cause came on to be heard on the transcript of record and was argued.
 
 
 8
 Defendants-appellants Sheri Cohen and Gary Stevens appeal from judgments entered in the United States District Court for the Eastern District of New York (Glasser, J.) convicting them, following a jury trial, of wire fraud, in violation of 18 U.S.C. § 1343. The district court sentenced Cohen to a 41-month term of imprisonment, a three-year term of supervised release, and an $800 special assessment. The district court sentenced Stevens to a term of imprisonment of one year and one day, a three-year term of supervised release, and a $350 special assessment.
 
 
 9
 Evidence at trial showed that the defendants were involved in a scheme to convince individuals to invest in credit card-activated facsimile machines for public use. Between December of 1989 and April of 1992, Cohen owned and operated three companies as part of the scheme. Stevens was a salesman at one of these companies, Distribution International, Inc. ("DII"), from August of 1991 through October of 1991. Over 85 fax machines were sold by Cohen's companies, generating approximately $543,000 in gross revenues. However, the companies actually installed only seven machines, and these machines generated almost no income.
 
 
 10
 In August of 1992, Stevens made a statement to the Federal Bureau of Investigation ("FBI"), in which he described his involvement in the operation at DII. In September of 1993, Cohen and Stevens were charged with wire fraud. On June 1, 1994, Cohen filed a letter asserting that she intended to introduce expert testimony that she suffered from a mental condition that "extremely hampered her ability to formulate the requisite intent for the charges contained in the indictment." In September of 1994, the government moved to preclude Cohen from offering the expert testimony. In a Memorandum and Order dated September 28, 1994, the district court granted the motion. Following a joint jury trial, Cohen and Stevens were convicted of wire fraud. This appeal followed.
 
 
 11
 Cohen contends that the district court erred in precluding the expert testimony concerning her mental condition. We disagree. Assuming for the purposes of this case that the enactment of the Insanity Defense Reform Act of 1984 does not bar a defendant from using evidence of mental abnormality to negate mens rea, we think that the district court properly exercised its discretion in precluding the evidence. A district court "should admit evidence of mental abnormality on the issue of mens rea only when, if believed, it would support a legally acceptable theory of lack of mens rea." United States v. Pohlot, 827 F.2d 889, 905-06 (3d Cir.1987), cert. denied, 484 U.S. 1011 (1988); see also United States v. Cameron, 907 F.2d 1051, 1067 (11th Cir.1990). In the present case, although the district court acknowledged that the testimony of one doctor, Dr. Robert Conciatori, "purport[ed] to relate to the issue of intent," we agree with the court that his testimony was conclusory and that it "fail[ed] to show how Cohen's alleged mental disorders affected her ability to form an intent to defraud." The proffered testimony by other medical experts also did not support a legally acceptable theory of lack of mens rea. Accordingly, the district court properly exercised its discretion in precluding the admission of testimony concerning Cohen's medical condition.
 
 
 12
 Cohen also contends that the district court erred in denying her pre-trial motion for a severance. She argues that she was prejudiced by the introduction in evidence of Stevens' statement to the FBI. We reject this contention. A district court's decision whether to grant a severance is "committed to the sound discretion of the trial judge." United States v. Benitez, 920 F.2d 1080, 1085 (2d Cir.1990) (quotations omitted). Although a defendant is guaranteed by the Confrontation Clause of the Sixth Amendment the right to cross-examine the witnesses against her, United States v. Kyles, 40 F.3d 519, 526 (2d Cir.1994), cert. denied, 115 S.Ct. 1419 (1995), we have held that a "confrontation problem" arising from the introduction of a co-defendant's statement at a joint trial "may be obviated ... by redacting the statement so that it no longer connects the nondeclarant defendant to the crimes charged." Id. In the present case, the redaction of Stevens' statement effectively removed all references to Cohen from the statement. Accordingly, the district court properly exercised its discretion in denying the severance motion.
 
 
 13
 Stevens contends that the evidence was insufficient to support his conviction for wire fraud. We reject this argument. "It is well settled that a defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a heavy burden." United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir.) (quotation omitted), cert. denied, 116 S.Ct. 545 (1995). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt, then [the defendant's] conviction must stand." Id. (citation omitted).
 
 
 14
 "An essential element of the government's proof in a mail fraud prosecution or a wire fraud prosecution is proof of a scheme or artifice to defraud." United States v. Starr, 816 F.2d 94, 98 (2d Cir.1987) (quotation omitted). "Essential to a scheme to defraud is fraudulent intent." United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir.1994). In order to establish fraudulent intent, "the government must show that some actual harm or injury was contemplated by the schemer." Id. (quotation omitted). However, "[w]hen the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself." Id. (quotation omitted). "[W]here the false representations are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." United States v. London, 753 F.2d 202, 206 (2d Cir.1985) (quotation omitted).
 
 
 15
 In the present case, there was ample evidence that Stevens repeatedly made representations to customers that went to the very nature of the bargain between the investors and DII--the quality and adequacy of the fax machines as an investment. There was a wide discrepancy between what the investors were promised and what they actually received. Because the necessary result of the fax machine scheme was to harm the investors, fraudulent intent on the part of Stevens could be inferred from the scheme itself.
 
 
 16
 We also reject Stevens' contention that the district court's charge concerning good faith was erroneous. The district court instructed the jury that
 
 
 17
 a belief by a defendant, if there were such a belief, that ultimately everything would work out all right so that nobody would lose any money, is not synonymous with good faith. No amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the persons who invested in the scheme will excuse fraudulent actions, will excuse false misrepresentations to obtain money.
 
 
 18
 This instruction was not erroneous. Because evidence showed that Stevens' misrepresentations were directed to the nature of the bargain between the investors and DII, it was irrelevant whether he believed that "ultimately everything would work out all right." See id. at 206-07 (holding that, where the misrepresentations were directed to the quality or adequacy of the goods, fraudulent intent was apparent and it was "irrelevant whether or not appellant believed that the contracts [in a commodities fraud scheme] were being covered").
 
 
 19
 We have considered the defendants' remaining contentions, and we find them all to be without merit.
 
 
 
 *
 The Honorable Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation