**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DOUGLAS ESTERLINE,

Defendant - Appellant.

No. 07-8076

D. Wyo.

(D.C. No. 07-CR-11-WFD)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered

submitted without oral argument.

Following his conditional guilty plea to being a drug user in possession of a

firearm, Douglas Esterline challenges the district court's denial of his motion to suppress.

He claims a search warrant was stale, unsupported by sufficient facts, and the authorized

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

search of another's residence was improperly expanded to include his private living space. We affirm.

## I. BACKGROUND

Around 11:30 p.m. on October 8, 2006, Officer Preciado with the Mills, Wyoming Police Department observed a female get out of a pickup truck and approach a Ford Mustang parked to the side of a Loaf 'N Jug building. The female sat in the front passenger seat and talked to the driver for a few minutes, then returned to the pickup truck. Both vehicles left in opposite directions.

Preciado followed the Mustang and contacted Officer Lindberg to have him follow the pickup truck. A series of events resulted in the search of the Mustang which exposed two digital scales with suspected methamphetamine residue belonging to Virgil Counts, the driver, and a little more than four grams of suspected methamphetamine in various containers. Counts was arrested and taken to jail.

Lindberg followed the pickup truck headed in the opposite direction. He stopped it because the license plate was not properly illuminated. The female driver identified herself as Sherri Schow, however, Lindberg was able to discover her true identity, Jessica Schow, through the police computer database. She was arrested for interference with a police officer. The passenger, Scott Bassett, correctly identified himself and informed Lindberg there was a handgun under the passenger seat. Lindberg removed the firearm and found methamphetamine close by. Bassett was arrested for possession of methamphetamine.

Both Bassett and Schow were interviewed by Special Agent Shatto of the Wyoming Division of Criminal Investigation (DCI). Schow told Shatto that earlier in the evening she and Bassett went to Virgil Counts' residence to return a borrowed pool stick and $100 she owed him. Counts was not at home, so Schow arranged to meet him at the Loaf 'N Jug. Schow admitted to purchasing methamphetamine from Counts on several occasions at his residence, but denied purchasing any on that day.

On October 9, 2006, Shatto applied for a search warrant of Counts' residence located at 3290 Harvey Place. The supporting affidavit detailed the circumstances leading to the searches of the two cars and the information obtained during his interview of Schow and Bassett. A warrant issued to search Counts' residence, which state law enforcement officers executed that day.

Upon arrival, the officers encountered Counts' architecturally unique residence. It consisted of a fusion of several rectangular shaped trailer houses physically attached to one another to form a single unit. The longest side of the first trailer faced Harvey Place. Each additional trailer was attached to the next facing the same direction and were oriented on the property sequentially from front to back. The doors between each structure were combined in such a manner to permit passage from one trailer to another without going outside. This structure is identified by a single address, 3290 Harvey Place.

Entrance to the structure(s) was obtained through the front door of the residence which faced Harvey Place and had the house numbers displayed to the door's side. Upon

entry, the officers observed Esterline, an occupant, coming from his bedroom located through the living room and kitchen; part of what once was the first trailer.[1]  The police performed a protective sweep of the area and escorted Esterline outside.  Upon discovering Esterline had an outstanding warrant for his arrest, the officers took him into custody and read him his *Miranda* rights.[2]  Esterline signed a waiver form and began talking to DCI Special Agent Weischedel.

In the course of questioning, Esterline said there was a .380 handgun in the linen closet in his bedroom.  Esterline also admitted that he uses methamphetamine when he can get it and last used approximately 1/4 gram the day before.  Esterline revealed he had some syringes and a spoon in a black box on his bedside table.  The officers seized the gun and ammunition along with the drug paraphernalia from Esterline's bedroom.

An indictment charged Esterline with being an unlawful user of a controlled substance in possession of a firearm (Count 1) and ammunition (Count 2) in violation of 18 U.S.C. § 922(g)(3) and 924(a)(2).  Esterline filed a motion to suppress the evidence seized from his bedroom and the statements he made.  He claimed his rented portion of the residence is separate from Counts' portion of the trailer.  Arguing there was no evidence to suggest contraband would be found in his portion of the premises, he asserted the police lacked probable cause and the search was illegal.  He contended the scope of the search warrant did not authorize the search of separate rented rooms or residences and did not authorize the seizure of the building's tenants.

---

[1]  Esterline was the only person in the home.
[2]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

At the suppression hearing, Weischedel described the structure(s). The front was the residential portion and the back was a work shop. There were no special markings outside or inside the structure to indicate more than one residence. Because of excessive clutter inside and around the building the front door, near the house number, was the only useable means of ingress and egress to the residential portion. Though it consisted of several trailers, there was only one kitchen and one living room centralized near both bedrooms in the front residential portion. However, both Counts and Esterline's bedroom doors had individual door locks.[3]

Esterline testified he only rented the front part of the trailer, namely the living room, kitchen and his bedroom. He claimed Counts did not use this portion of the trailer, and instead, Counts would access his rear portion of the trailer through a sliding glass door in the back, never the front door. According to Esterline, Counts came to the front only to engage in brief talks. However, Esterline admitted the entire property is identified by the single address 3290 Harvey Place. According to Esterline within the first few minutes he tried to tell the police which portion of the trailer was his and which belonged to Counts , stating he lived "at that end." (R. Vol. III at 60.) Nonetheless, the police immediately questioned him about firearms and drugs during their protective sweep before being read his *Miranda* rights.

The district court denied Esterline's motion finding the affidavit established probable cause or, in the alternative, it was not so facially invalid to make the police's

---

[3] Counts had keys to both doors; Esterline only had the key to his room. [R. Vol. III at 52-53]

objective good faith reliance entirely unreasonable. *See United States v. Leon*, 468 U.S. 897, 923 (1981) (Outlining exceptions to suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant). The court also rejected Esterline's argument that the police exceeded the search warrant's scope when they searched his portion of the trailer. It found the configuration of the trailer, as it appeared to the police, would not have put them on notice that Esterline's portion of the trailer was a separate residence. Furthermore, the police were not required to believe Esterline when he attempted to communicate that his portion of the trailer was truly a separate residence.

Unsuccessful at suppressing the evidence against him, Esterline pled guilty to Count 1 reserving the right to appeal from the denial of his suppression motion. The government agreed to dismiss the remaining count. The district court sentenced him to five months imprisonment to be followed by two years supervised release.

## II. DISCUSSION

Esterline argues the search warrant lacked probable cause and execution of the warrant went beyond its scope. In reviewing the district court's disposition of a motion to suppress, "we accept the factual findings unless they are clearly erroneous, and review questions of law de novo." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). "Whether a warrant is supported by probable cause and whether the *Leon* good faith exception applies are both questions of law." *Id*. As the prevailing party we consider the evidence in the light most favorable to the government. *United States v.*

*Rice*, 358 F.3d 1268, 1273 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1103 (2005). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law. *United States v. Green,* 178 F.3d 1099, 1104 (10th Cir. 1999).

    A. Probable Cause and Staleness

    In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances [to ensure] 'that the [issuing judge] had a substantial basis for concluding that probable cause existed.'" *United States v. Tisdale,* 248 F.3d 964, 970 (10th Cir. 2001) (quoting *Illinois v. Gates,* 462 U.S. 213, 238-39 (1983)). We afford the issuing judge's finding of probable cause great deference unless the affidavit fails to provide that substantial basis. *See United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). We "interpret search warrant affidavits in a common sense and realistic fashion." *United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006) (recognizing issuing judge is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts); *United States v. Rowland,* 145 F.3d 1194, 1205 (10th Cir. 1998) (same).

    A warrant is based on probable cause when the facts presented in the affidavit would "warrant a man of reasonable caution" to believe that evidence of a crime will be found at the place to be searched. *Texas v. Brown,* 460 U.S. 730, 742 (1983); *see also, United States v. Rahn*, 511 F.2d 290, 292 (10th Cir. 1975) ("[A] valid warrant may issue

when the circumstances before a proper officer are such that a person of reasonable prudence would believe that a crime was being committed on the premises to be searched or evidence of a crime was being concealed there.").

Esterline argues the affidavit for the search warrant failed to provide a nexus between the drugs discovered in Counts' car and his residence. S*ee United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990) ("Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched."). We generally agree. The fact drugs were discovered in Counts' vehicle does not necessarily provide a nexus with his residence. However, in this case, the affidavit also provided the statement from Schow indicating she regularly purchased drugs from Counts including at his residence. This information, viewed in conjunction with the drugs discovered in Counts' car, provide the nexus necessary to establish a fair probability that evidence of illegal drugs will be found at Counts' residence.

Esterline maintains Schow's statement lacked a time frame from which to judge how long ago she purchased drugs from Counts at his residence, thereby rendering her information stale. The nexus tying illegal activity to a residence "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). Whether the missing time frame rendered the affidavit too stale to support a finding of probable cause is not determinative because the police acted in objective good faith reliance on the search warrant issued from a detached and neutral magistrate. *See Leon*, 468 U.S. at 922-

-8-

Good faith exists where there is "*some* factual basis connecting the place to be searched to the defendant or suspected criminal activity." *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005). Here, the evidence of drugs found in Counts' vehicle and the nature of his interaction with Schow at the Loaf 'N Jug reasonably indicates he was a currently active drug dealer. It is also reasonable to infer that Schow went to Counts' residence to purchase drugs that night, but did not find him there. The affidavit was not "so lacking in indicia of probable cause as to render official belief in itsexistence entirely unreasonable." *Leon*, 468 U.S. at 923.

B. Scope

Esterline argues the police exceeded the search warrant's scope because it did not authorize the search of a separate tenant's bedroom or belongings. He relies on *Maryland v. Garrison*, for the proposition that when the police discovered he had a separate bedroom during the search they were required to limit their search to Counts' portion of the trailer. 480 U.S. 79, 86-7 (1987). In *Garrison*, the police executed a search warrant authorized for the third floor apartment of a building. After finding incriminating evidence against a tenant living on the third floor, the police discovered the floor actually contained two separate units and they had searched the wrong one. The police discontinued searching the separate apartment and proceeded to focus on the correct unit. *Id*. at 80-1. The Court found the search warrant, though overbroad in hindsight, was not retroactively invalidated by the discovery of the separate units. This is so because "[t]he

validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose, to the issuing magistrate." *Id.* at 86. The Court also found the execution of the warrant to be constitutional because the police were unaware prior to entering the building that there were two separate units on the third floor. It determined "the validity of the search of [the wrong unit] pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Id.* at 88.

Even if we were to assume for appellate purposes the warrant was overbroad, we conclude the officers' failure to realize this overbreadth was objectively reasonable. The district court found the trailer to be a single residence with roommates, not a multi-unit dwelling. The finding is fully supported by the evidence. Nothing inside or out would suggest the trailer contained multiple separate units. The residence is identified by a single address and the components were melded into one large structure interconnected with common passageways. The residential area contained only one common living room and kitchen centrally located between Counts and Esterline's bedrooms.

Esterline's attempt to convey the location of his private bedroom within Counts' residence does not destroy the objective reasonableness of the police action. In *Garrison*, the Court balanced the permissible scope of a search based on the information available to the police as the search proceeds with "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making

arrests and executing search warrants." *Garrison*, 480 U.S. at 87. Given the nature of the residence as the police encountered it, they were not required to simply take Esterline's word at face value. *See Untied States v. Canestri*, 518 F.2d 269, 273 (2d Cir. 1975) (Finding reliance by the police on the mere declaration of a single-family home owner that one of the rooms "belongs" to a party not named in the warrant thereby limiting the search's scope would frustrate the purpose of the search warrant and be inappropriate); s*ee also, United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) ("A search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that is was issued based on information regarding the alleged illegal activities of one of several occupants of a residence."); *United States v. Kyle*, 40 F.3d 519, 523-24 (2d Cir. 1994) (permitting the search of a locked bedroom inside a single-family house which did not objectively appear to be a separate unit). Esterline's subjective understanding of the living arrangements cannot destroy the objectively apparent nature of the structure.

AFFIRMED.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge

-11-