**[J-39-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 45 MAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court at No. 1656 MDA 2016 dated |
| | : | February 13, 2018 Affirming the |
| v. | : | Judgment of Sentence dated May 10, |
| | : | 2016 by the Cumberland County |
| | : | Court of Common Pleas, Criminal |
| DYLAN SCOTT TURPIN, | : | Division, at No. CP-21-CR-0000623- |
| | : | 2015 |
| Appellant | : | |
| | | ARGUED: May 15, 2019 |


**OPINION**


**JUSTICE DOUGHERTY**                    **DECIDED: September 26, 2019**

We granted discretionary review to determine whether a search warrant for an entire multi-bedroom residence shared by appellant, Dylan Scott Turpin, and his roommate, Benjamin Kato Irvin, was constitutionally permissible under the Fourth Amendment to the United States Constitution[1] and Article I, Section 8 of the Pennsylvania Constitution[2] even though the warrant was premised solely on the activity of Irvin. We conclude police had probable cause to search the entire residence and therefore the

---

[1] The Fourth Amendment provides, in relevant part, "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

[2] Article I, Section 8 provides, in relevant part, "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA. CONST. art. I, §8.

warrant was constitutionally permissible.  Accordingly, we affirm the order of the Superior Court.

On December 4, 2014, Detective Trenton Mellott of the Cumberland County Drug Task Force began investigating Irvin based on information received from a confidential informant regarding the sale of heroin.  Affidavit of Probable Cause 2/19/15 at 1. Detective Mellott contacted Irvin's parole officer who informed him Irvin was residing at 105 E. Green Street in Mechanicsburg, and appellant also seemed to be living at that address.  *Id.*  Based on this information, Detective Mellott conducted surveillance of the single family residence located at this address over the next few months and observed an unusually high number of individuals making short visits there.  *Id.* at 2.[3]

In mid-February 2016, Detective Mellott interviewed a second confidential informant who stated he had been purchasing heroin from Irvin on a regular basis and had bought heroin from Irvin at the Green Street residence.  *Id.*  As this information had been corroborated by his surveillance, Detective Mellott arranged for the confidential informant to conduct a controlled buy of heroin from Irvin.  *Id.*  While the confidential informant was arranging to meet Irvin at a nearby business, Detective Mellott surveilled the Green Street residence and observed multiple individuals enter and then quickly exit, activity which Detective Mellott believed was indicative of drug dealing.  *Id.*  Detective Mellott then observed two people exit the residence and enter a black Cadillac that Irvin

[3] Our reference in this opinion to the building located at 105 E. Green Street as a "single family residence" is not based upon any familial relationship among those sharing the house, *see, e.g., Appeal of Miller*, 515 A.2d 904, 907 (Pa. 1986) (designation "single family residence" is not limited to a house occupied by "a group of persons related by blood or marriage"), nor do we utilize it as a term of art arising from zoning law as the dissent suggests.  *See* Dissenting Opinion, slip op. at 2-3.  Instead, we use the term as it is commonly used to describe the type of structure located on the property, and thus distinguish "single family residence" from, for example, an apartment building that includes multiple residential units; as such, the term is descriptive only and not intended to reflect the relationship between the residents of the subject property.

was known to drive. *Id.* at 1-2. Detective Rodney Temple, who was surveilling the location of the controlled buy, observed the same black Cadillac arrive at the buy location. *Id.* at 2. A male and female then exited the Cadillac, the male conducted a hand-to-hand transaction with an unknown individual, and the male instructed the confidential informant to enter the business. *Id.* At this time, Detective Christopher Collare entered the business with the confidential informant and positively identified Irvin as the male with whom the confidential informant interacted. *Id.* The detectives observed Irvin and the unknown female get back into the black Cadillac, drive to the Green Street residence, and enter the house. *Id.* The confidential informant then provided Detective Mellott with ten blue bags of heroin, stamped "Blue Magic," purchased from Irvin. *Id.*; N.T. 3/24/16 at 12.

Based on the above, Detective Mellott obtained a warrant to search "the residence at 105 E. Green St[,] . . . a single family townhouse" for heroin, drug paraphernalia, proceeds from illegal drug sales, and cellphones owned or possessed by Irvin. Application for Search Warrant and Authorization 2/19/16 at 1.

On February 21, 2015, the search warrant was executed and a special response team cleared the building — a two story house containing a living room and kitchen on the first floor and two bedrooms and one bathroom on the second floor — of all individuals, including appellant. N.T. 8/11/15 at 15-16, 18; N.T. 3/23/16 at 24. Appellant was placed into a vehicle by Sergeant Brian Curtis of the Mechanicsburg Police Department and the two discussed the living arrangements at the residence. *Id.* at 16. Appellant told Sergeant Curtis he and Irvin both lived there, splitting the rent, and each occupying one of the two bedrooms. *Id.* at 16-17. Thereafter, Sergeant Curtis brought appellant back into the house so he could retrieve shoes from his bedroom, which appellant described as the bedroom on the right. *Id.* at 17. Sergeant Curtis observed the door to appellant's bedroom was open and unlocked, there was no evidence appellant had ever placed a

padlock on the bedroom door, and there was not a room number or mailbox on the outside of the bedroom door. *Id.* at 22.

Officers proceeded to search the entire house, including appellant's bedroom. N.T. 3/24/16 at 14-15. Recovered from appellant's bedroom were, *inter alia*, a Glock firearm, ammunition, six bags of heroin including one blue bag stamped "Blue Magic," a bag of marijuana, and $902 in cash. *Id.* at 15, 21-22, 27-28, 56. Police also recovered 37 bags of heroin, some stamped "Blue Magic," and $1,000 cash from Irvin's bedroom as well as 200 bags of heroin from the living room. *Id.* at 15, 18-20, 56. On March 10, 2015, police returned to the Green Street residence and recovered 80 bags of heroin from the second floor bathroom, which was adjacent to appellant's bedroom. *Id.* at 73-74. Based on the above, appellant was arrested and charged with, *inter alia*, three counts of possession of a controlled substance, and one count each of conspiracy to commit possession with the intent to deliver and receiving stolen property.[4]

Prior to trial, appellant filed a motion to suppress claiming, *inter alia*, the warrant was overbroad because it did not limit the specific areas to be searched to those under the control of Irvin and the warrant was improperly executed because the police were made aware of its overbroad nature from appellant's discussions with Sergeant Curtis. N.T. 8/11/15 at 4. The suppression court held a hearing at which Sergeant Curtis testified as detailed above. *Id.* at 15-27. In addition to testimony from other police officers, *see id.* at 5-14, 27-35, 43-48, appellant also testified at the hearing. *Id.* at 35-42. Relevant to the claim discussed herein, appellant testified he told Sergeant Curtis of the living arrangements at the Green Street residence, he and Irvin occupied separate bedrooms at the residence, he shut his bedroom door when he was not home, and Irvin was not permitted to enter his bedroom without permission. *Id.* at 35-38.

---

[4] 35 P.S. §780-113(a)(16), 18 Pa.C.S. §903, and 18 Pa.C.S. §3925(a), respectively.

The court ultimately denied appellant's motion to suppress. In doing so, the suppression court held the warrant itself was not overbroad, finding "[a] search warrant to a residence need not specify each and every room of a residence to be searched and in fact can authorize a search of an entire residence." Suppression Court Opinion 9/24/15 at 4, *citing Commonwealth v. Waltson*, 724 A.2d 289, 290 (Pa. 1998) ("where there is probable cause to believe that contraband is located within a particular room of a single unit house, Article [I], Section 8 [of the Pennsylvania Constitution] does not preclude a search of the entire residence"). The court further determined the search warrant was not improperly executed, finding "[t]here was no need for police to distinguish between what rooms were private versus what rooms were public; the warrant authorized a search of the entire residence without distinction." *Id.*

Appellant proceeded to a jury trial, after which he was convicted of the aforementioned crimes. The court later sentenced appellant to an aggregate term of one year less one day to two years less two days of county imprisonment to be followed by three years of probation. N.T. 5/10/16 at 4-5.

On appeal to the Superior Court, appellant renewed his claim the warrant was overbroad and his suppression motion should have been granted. Appellant contended the facts of his case were distinguishable from those in *Waltson*. Specifically, appellant argued all the areas searched in *Waltson* were under the control of the resident who was the subject of the search warrant, but in this case the search was expanded into appellant's bedroom, which was a separate living unit solely under the control of a resident who was not the subject of the search warrant. Appellant's Superior Court Brief at 17. The panel rejected this argument, finding *Waltson* and *Commonwealth v. Korn*, 139 A.3d 249 (Pa. Super. 2016) — a case with facts analogous to the case at hand — controlled the issue because there was no indication in the record that appellant's

bedroom constituted a separate living unit. *Commonwealth v. Turpin*, 1656 MDA 2016, unpublished memorandum at 9 (Pa. Super. filed Feb. 13, 2018). The panel premised its holding on the facts appellant's bedroom did not have a separate mailbox, address, or private entrance and appellant himself testified he would only shut the bedroom door when he left the residence, rather than lock it. *Id.*

We accepted review to address the following question raised by appellant, which was rephrased for purposes of clarity:

> Does a search warrant for a multi-bedroom residence shared by adults permit police to search the entire residence and all bedrooms within, where the warrant and affidavit of probable cause are premised on the activity of only one occupant in that multi-occupant residence who does not have complete control over the private bedrooms of his roommates?

*Commonwealth v. Turpin*, 191 A.3d 1285 (Pa. 2018) (*per curiam*). Our standard of review over an order denying suppression requires us to "consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted" when read in the context of the suppression hearing record as a whole. *Commonwealth v. Johnson*, 160 A.3d 127, 138 (Pa. 2017), *cert. denied*, 138 S.Ct. 508 (2017) (internal citations omitted); *see also In the Interest of L.J.,* 79 A.3d 1073, 1085 (Pa. 2013). "Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Johnson*, 160 A.3d at 138. However, as here, "where the appeal . . . turns on allegations of legal error, the suppression court's conclusions of law are not binding" as it is this Court's duty "to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Mistler*, 912 A.2d 1265, 1269 (Pa. 2006) (internal brackets, quotations, and citation omitted). Therefore, the legal conclusions of the lower courts are subject to our plenary review. *Id.*

Appellant first contends the search warrant was overbroad in violation of the Fourth Amendment. Appellant argues warrants must be limited to areas for which there is probable cause to search and the Fourth Amendment's "'requirement that a specific 'place' be described . . . refers to a single living unit (**the residence of one person or family**).'" Appellant's Brief at 14, *quoting United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955) (emphasis added by appellant). Appellant further cites *United States v. Diange*, 32 F.Supp. 994 (W.D. Pa. 1940), for the proposition that "a search warrant describing the entire dwelling-house will be insufficient where 'each family [is] in possession of a different part of said dwelling-house.'" Appellant's Brief at 14, *quoting Diange*, 32 F.Supp. at 994. Appellant contends the Green Street residence was neither the residence of one person nor one family and, as such, the warrant for the residence "needed to be limited to the areas within the residence that were under the control of one person or one family." *Id.* at 17. Since the warrant was not restricted to only the living areas under the control of Irvin, the subject of the warrant, appellant contends the warrant was constitutionally infirm under the Fourth Amendment. *Id.*

Appellant additionally contends the warrant was overbroad in violation of Article I, Section 8 of the Pennsylvania Constitution, as this Court has stated "'a search warrant directed against an apartment house, **or other multiple-occupancy structure** will be held invalid for lack of specificity if it fails to describe **the particular room** or subunit to be searched with sufficient definiteness to preclude a search of other units.'" *Id.* at 17-18, *quoting Commonwealth v. Carlisle*, 534 A.2d 469, 471 (Pa. 1987) (internal ellipsis omitted, emphasis added by appellant). Appellant recognizes the *Waltson* Court stated "the search of a single unit house" satisfies the enhanced privacy rights provided by Article I, Section 8. *Id.* at 18 (emphasis omitted), *quoting Waltson*, 724 A.2d at 290. However, appellant contends his situation is distinguishable from that of *Waltson* because the

privacy rights of individuals other than the subject of the warrant were implicated; the search here "was not limited to the areas under the control of the resident named in the warrant but overflowed into an area under the control of [appellant], who was not the subject of any investigation[.]" *Id.* at 19. Appellant further attempts to distinguish his case from *Waltson* by claiming "the search was not of a **single unit house** but of a multiple-occupancy structure." *Id.* (emphasis in original). As a result, appellant contends, "the general requirement announced in *Carlisle* [and quoted above] pertains[.]" *Id.*

Appellant further submits "the police knew, prior to the search, which bedroom was [appellant's] and . . . [could not] reasonably believe that contraband could be found in areas, like [appellant's] bedroom, that were not under the control of [ ] Irvin." *Id.* at 19-20. Therefore, appellant contends the Commonwealth's argument Irvin could have hidden contraband in appellant's bedroom is speculative at best and, if the search of appellant's bedroom was justified by such speculation, Irvin should have been held criminally liable for any contraband found in appellant's bedroom. *Id.* at 20-21. With regard to *Korn*, which appellant recognizes is more akin to his case than *Waltson*, appellant argues that case was wrongly decided and should be expressly overturned by this Court based on the analysis of the dissent in that case, which would have held "[b]ecause the affidavit . . . only established probable cause as to the areas accessed and controlled by [the subject of the warrant], and because the police were put on notice that there was another bedroom occupied by at least one other person," the search was overbroad. *Id.* at 23-24, *quoting Korn*, 139 A.3d at 261 (Shogan, J., dissenting).

Finally, appellant provides an analysis under *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991), in which he argues Article I, Section 8 provides distinct and greater protections than those conferred by the Fourth Amendment. Appellant's Brief at 24-35. Appellant relies on decisions from this Court which have stated the text of Article I, Section

8 provides more stringent particularity requirements for obtaining a warrant than those found in the Fourth Amendment. *Id.* at 26-28, *citing Commonwealth v. Grossman*, 555 A.2d 896, 899 (Pa. 1989). Appellant also cites decisions from other states which have held searches of multi-resident homes must be narrowly tailored to rooms under the control of the subject of the warrant. *Id.* at 29-31, *citing State v. Fleming*, 790 N.W.2d 560 (Iowa 2010) (single family residence) and *People v. Avery*, 478 P.2d 310 (Colo. 1970) (rooming house). With regard to policy concerns, appellant contends "if the search of [his] bedroom is permitted to stand, the right to privacy . . . will protect only those who can afford to live alone." *Id.* at 32.[5]

The Commonwealth responds by arguing the federal courts have held that, under the Fourth Amendment, "[a] search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence." Commonwealth's Brief at 11, *quoting United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) and *citing United States v. McLellan*, 792 F.3d 200, 212 (1st Cir. 2015) (warrant for single family residence authorizes search of entire dwelling). To further illustrate this point, the Commonwealth also discusses *United States v. Kyles*, 40 F.3d 519 (2d Cir. 1994), which held "despite the multi-occupant nature of the premises, there was no reason to believe that [the locked] bedroom was a separate residence" as it "'ha[d] neither its own access from the outside, its own doorbell, nor its own mailbox'" and further, "the officer's awareness that [only one individual] could access the bedroom when locked, 'did not, by itself, elevate the bedroom to the status of a separate residential unit.'"

---

[5] The Public Defender Association of Pennsylvania filed an *amicus curiae* brief on behalf of appellant, reiterating each of appellant's arguments, but focusing on the public policy ramifications of judicial decisions that limit the privacy rights of those who cannot afford to live alone, as well as the continuing impact of the war on drugs. *See Amicus* Brief of Public Defender Association of Pennsylvania at 15-26.

Commonwealth's Brief at 13-14, *quoting Kyles*, 40 F.3d at 524. The Commonwealth additionally argues *Hinton* and *Diange*, which are relied upon by appellant, are inapposite; the warrants in those cases were held to be overbroad "not because they were single-family residences occupied by roommates, but because the residences listed on the respective search warrants were comprised of multiple, individual apartments or units." *Id*. at 14-16, *citing Hinton*, 219 F.2d at 325 and *Diange*, 32 F.Supp. at 994.

Based on the above cases, the Commonwealth maintains "a multi-occupant dwelling is not synonymous with [a] multi-unit dwelling for Fourth Amendment [p]urposes. Rather, to qualify as a multi-unit dwelling requiring a separate search warrant, there must be some indicia that the residence is divided into separate and substantially independent living units." *Id*. at 16. Therefore, the Commonwealth argues "[t]he mere fact that [appellant] has his own, private bedroom does not transform the single family townhouse into a multi-unit dwelling, thus, there was probable cause to search the [Green Street residence], and the search warrant was sufficiently particular." *Id*. at 17-18.

With regard to Article I, Section 8, the Commonwealth preliminarily concedes "'[t]he text of Article I, Section 8 . . . has been interpreted as requiring more specificity in the description of items to be seized than the federal particularity requirement." *Id*. at 18, *quoting Waltson*, 724 A.2d at 291. Notwithstanding that fact, however, the Commonwealth contends "it has been unequivocally recognized that when officers have probable cause to search one room in a single living unit, a search of the entire residence is not overbroad" under Article I, Section 8, *id*. at 20, *citing Waltson* and *Korn*, and "[t]o conclude that a bedroom constitutes a separate living unit within a single residence apartment would essentially abandon the practical common sense approach this Honorable Court has previously directed be taken in determining whether the place to be

searched is specified with sufficient particularity." *Id.* at 21 (internal quotations and citations omitted).

In support of this argument, the Commonwealth points out appellant's "[bed]room did not have a separate address, a door leading directly outside, a separate mailbox, or a lock. Thus, [appellant's] bedroom is not so separate from the rest of the residence that it constitutes an individual residence itself." *Id.* at 22. The Commonwealth additionally argues the quote from *Carlisle* relied upon by appellant was taken out of context because "[d]espite the mention of 'room,' the search warrant in *Carlisle* was deemed to describe the place to be searched with sufficient particularity even though the affidavit that accompanied the warrant designated only the specific **apartment** to be searched." *Id.* at 22 (emphasis in original), *citing Carlisle*, 534 A.2d at 471. Accordingly, the Commonwealth contends "*Carlisle* cannot be read to preclude the search of all rooms inside a single apartment if there is probable cause to believe contraband is located in any room of the apartment." *Id.* at 23.

Finally, the Commonwealth addresses the public policy concern raised by appellant and the Public Defender Association of Pennsylvania: the decision below allows innocent roommates, who cannot afford to live alone and thus have an expectation of privacy in their separate bedrooms inside a shared house, to fall victim to government intrusion due to their economic circumstances. The Commonwealth responds that "[a]llowing such a concern to lend to a finding that an individual's bedroom is a separate home for purpose[s] of Article I, Section 8, would ultimately lead to barriers to effective law enforcement." *Id.* As an example of such barriers, the Commonwealth claims one roommate "could frustrate the efforts of police by taking [another roommate's] contraband and placing it in his room so that it falls outside the scope of the warrant." *Id.* at 25, *citing Commonwealth v. Reese*, 549 A.2d 909 (Pa. 1988) (search of visitor's personal property

while on search premises falls within scope of search warrant because holding otherwise would allow visitor to frustrate warrant by placing contraband with his personal effects).[6]

"[T]he Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), *quoting* U.S. CONST. amend. IV. This requirement is meant to prevent general searches and "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* Along those lines, "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* (internal quotation and citation omitted). Based on these principles, the federal courts have formulated a general rule that a warrant describing an entire multi-unit building is void where there is only probable cause to search a single unit. *Hinton*, 219 F.2d at 326 ("a warrant which describes an entire building when cause is shown for searching only one apartment is void"). However, the federal courts have consistently held this rule does not apply to single family residences but, instead, "[a] search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence." *Ayers*, 924 F.2d at 1480. *See also McLellan*, 792 F.3d at 212 (warrant for single family residence authorizes search of entire residence regardless of who areas being searched belongs to); *United States v. Schwinn*, 376 F.App'x 974, 982 (11th Cir. 2010) (shared dwelling does not exclude portions from scope of warrant as it is presumed suspect has access to

---

[6] Although the Commonwealth does not conduct a separate *Edmunds* analysis, it indicates a discussion of each *Edmunds* factor was encompassed in the portion of its brief focusing on Article I, Section 8 and, despite the fact that Article I, Section 8 provides greater privacy protections than the Fourth Amendment, the search warrant was not overbroad under the Pennsylvania Constitution. Commonwealth's Brief at 26-28 and n.8.

entire dwelling); *Durham v. McElynn*, 254 F.App'x 892, 896 (3d Cir. 2007) (roommate situation does not convert single family residence into apartment or multi-unit building); *Kyles*, 40 F.3d at 524 (bedroom in multi-occupant residence is not a separate residential unit where it "had neither its own access from the outside, its own doorbell, nor its own mailbox").

*McLellan*, in particular, is analogous to the present appeal. In that case, the FBI was investigating the online sharing of child pornography. *McLellan*, 792 F.3d at 205. The pornography originated from an IP address assigned to Darryl J. St. Yves at 180 High Street in Taunton, Massachusetts. *Id.* The FBI subsequently confirmed the address of St. Yves with government entities and also observed a single mailbox at the High Street residence, which listed St. Yves and two other individuals, Keller and Theobold, as occupants. *Id.* A search warrant for the house at the High Street address was obtained and, during its execution, agents learned the house was owned by St. Yves and Keller and they had recently rented the third bedroom, formerly occupied by Theobold, to McLellan. *Id.* at 205-06. The FBI then searched the entire house and, among other things, recovered child pornography from McLellan's bedroom. *Id.* at 206.

McLellan filed a motion to suppress the evidence recovered from his bedroom, arguing the purported "multi-unit" character of the residence caused the warrant to be insufficiently particular and thus, the search of his bedroom exceeded the scope of the warrant. *Id.* at 212. Both the district court and the First Circuit Court of Appeals rejected this argument, finding McLellan's bedroom "was not equipped for independent living because there was no separate entrance to the street and the occupants had joint access to the common areas such as the kitchen and living rooms." *Id.* at 213 (internal quotations omitted). Consequently, the *McLellan* court held the warrant was not overbroad as "a warrant for a single-unit residence authorizes the search of that entire dwelling regardless

of who the area being searched belongs to, so long as the items delineated in the warrant could reasonably be found in the searched area." *Id.* at 212.

In his attempt to avoid the imposition of this clear Fourth Amendment rule upon his case, appellant argues the Fourth Amendment requirement that a specific place be described "'refers to a single living unit (the residence of one person or family)[,]'" Appellant's Brief at 14 (emphasis omitted), *quoting Hinton*, 219 F.2d at 326, such that "where two or more families reside together, a search warrant describing the entire dwelling-house will be insufficient where 'each family [is] in possession of a different part of said dwelling-house.'" *Id.*, *quoting Diange*, 32 F.Supp. at 994. Notwithstanding appellant's reliance on *Diange* and *Hinton* for this proposition, the decisions are inapposite as they involved multi-unit apartment buildings while this case involves a single family residence occupied by several unrelated individuals. The warrant in *Hinton* was held to be invalid because it failed to identify the particular apartment in a four-unit building where drug sales were being conducted and whether the alleged sellers occupied any of the apartments. *Hinton*, 219 F.2d at 325. Based on this deficiency, the *Hinton* court held "searching two or more apartments in the same building is no different than searching two or more completely **separate** houses. Probable cause must be shown for **each house** or, in this case, **each apartment**." *Id.* at 325-26 (emphasis added). In *Diange*, the court specifically stated the building at issue "contained two stories and that it was occupied and in possession of two families, each family being in possession of a different part of said dwelling-house." *Diange*, 32 F.Supp. at 994. Hence, these cases do not stand for the proposition that rules applicable to searching single family residences apply only if the building is occupied by a single person or single family.

Rather, for purposes of the Fourth Amendment, there must be some evidence a residence is divided into separate and independent units to support the argument

forwarded by appellant. There is simply no evidence here to suggest appellant's bedroom in the house subject to the search warrant was a separate living unit. Although appellant testified he shut his bedroom door when he was not home and Irvin was not permitted to enter his bedroom without permission, Sergeant Curtis specifically noted appellant's bedroom door was open and unlocked during the execution of the warrant, there was no evidence appellant had ever placed a padlock on the bedroom door, and there was not a separate room number or mailbox on the outside of the bedroom door. As such, it is clear appellant's bedroom inside the single family residence identified in the search warrant did not constitute a separate living unit. *See Kyles*, 40 F.3d at 524 ("agents had no reason to believe [the bedroom] was a separate residence: it had neither its own access from the outside, its own doorbell, nor its own mailbox. [Kyle's mother's] statement that [Kyle] was the only person with a key to the room did not, by itself, elevate the bedroom to the status of a separate residential unit").[7] We therefore apply the federal rule that a warrant for a single family residence authorizes a search of the entire residence regardless of whether the areas to be searched belong to the subject of the warrant and hold the search warrant at issue in this case did not violate the particularity requirement of the Fourth Amendment.

This holding does not end our inquiry, however, as this Court has held Article I, Section 8 of the Pennsylvania Constitution affords greater protection than its Fourth Amendment counterpart, including a more stringent particularity requirement. *Grossman*, 555 A.2d at 899 (finding "as nearly as may be" language of Article I, Section 8 to require more specificity in description of items to be seized than federal particularity requirement).

---

[7] This is not to suggest we now hold the mere existence of a padlock, or separate mailboxes, doorbells, room numbers, or entrances will always indicate a residence has been divided into separate and independent residential units. Nor do we suggest the mere absence of the aforementioned items will always indicate a residence is a single family residence. We simply recognize, as did the *Kyles* court, these are factors relevant to the determination. *See Kyles*, 40 F.3d at 524.

Indeed, this Court has already explored the contours of this more stringent particularity requirement through an analysis pursuant to *Edmunds*, in a similar context in *Waltson*.

In *Waltson*, the defendant's girlfriend told police he was growing marijuana in his basement. 724 A.2d at 290. Based on this information, police obtained and executed a search warrant for Waltson's entire residence, which included, among the items to be seized, "any records of occupancy and/or ownership of property, any controlled substances, any drug paraphernalia, and any records, documents or photos related to drug trafficking." *Id.* at 290, 293. Waltson was arrested based upon not only the marijuana plants found in his basement but also other drugs and drug paraphernalia found throughout the remainder of the residence. *Id.* Following his arrest, Waltson filed a motion to suppress the evidence found during the search, arguing the warrant was overbroad because the police had probable cause to believe contraband was present only in his basement rather than throughout the entire residence. *Id.* This Court ultimately granted allowance of appeal to decide the question of "whether a search warrant is overbroad where it authorizes a search of the entire residence, where the probable cause underlying the warrant relates to only a particular room of the house." *Id.* at 290-91.

The *Waltson* Court conducted an *Edmunds* analysis to determine whether the search warrant violated the particularity requirement of Article I, Section 8. We find the Court's analysis instructive:

> This court has recognized that the wording of Article [I], Section 8 is similar to the language of the Fourth Amendment. But, this does not demand that the interpretation of the two provisions be identical. The text of Article [I], Section 8, "as nearly as may be," has been interpreted as requiring more specificity in the description of items to be seized than the federal particularity requirement. This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another.
>
> This distinction between the two provisions is consistent with the historical background of Article [I], Section 8, which establishes that the purpose

underlying Article [I], Section 8 was to protect persons from unreasonable searches and seizures conducted pursuant to general warrants. At the time that Article [I], Section 8 was drafted, the utmost concern of the drafters was to protect citizens from searches and seizures unsupported by probable cause. Moreover, this court has held that embodied in Article [I], Section 8 is a strong notion of privacy, which is greater than that of the Fourth Amendment.

It is from this notion of enhanced privacy rights that we proceed in the instant case. In *Edmunds,* this court explained that the twin aims of Article [I], Section 8 are the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause. Probable cause is determined based on the totality of the circumstances. The totality of the circumstances test is satisfied where the police officers have a reasonable belief that the items to be seized are related to criminal conduct and that those items are presently located in the place to be searched.

In order to protect these twin aims, a warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described precise[ly] enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity. Thus, where a search warrant adequately describes the place to be searched and the items to be seized the scope of the search extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted.

Case law from our sister states is consistent with Pennsylvania jurisprudence on this issue. In *Shoemaker v. Maryland,* 451 A.2d 127 ([Md.] 1982), [Shoemaker] challenged the scope of the search, since the allegations "pointed to the suspect documents being in a single desk in a single room and that the warrant gave the officers the unnecessarily broad prerogative to search the entire house." *Shoemaker*[, 451 A.2d] at 139. In rejecting [Shoemaker's] argument, the court explained that pursuant to the Fourth Amendment and Art. 27, Section 551 of the Maryland Code the particularity requirement was satisfied where the search was limited to a particular, ascertainable, well-described house. *Id.* at 138-139. *See also Missouri v. Weide,* 812 S.W.2d 866 (Mo.Ct.App. 1991) ("the search of an entire residence for contraband is not overbroad when the contraband is of the type that could easily be concealed anywhere within the residence.");

*Madrid v. Texas,* 595 S.W.2d 106 ([Tex.]Crim.App. 1979) (holding search of entire residence was reasonable, even though confidential informant observed heroin in only two areas within the apartment). Thus, it is generally accepted that the scope of a search warrant is limited by the items to be seized and where they may be found and not to a particular location within those premises. W. LaFave, SEARCH AND SEIZURE, §4.10(d) (3d ed. 1996) (any claims that the scope of a search must be limited to a particular location within the premises have been quite properly rejected).

Lastly, we look at the public policy concerns involved. [Waltson] offers the theory of a narrower search based on his belief that Pennsylvania zealously guards individual privacy rights. However, the individual privacy rights at issue are not strained by a search of the entire single family residence. Rather than supporting Pennsylvania's protection of individual privacy rights, [Waltson's] position renders that important tradition impotent by requesting that this [C]ourt extend it to absurd extremes. For example, a named eyewitness tells the police that he was in Mr. Smith's house 10 minutes ago, where he saw a dead body in the living room. The issuing magistrate would limit the places to be searched to the living room. When police arrive at the scene and enter the living room there is no dead body. Under [Waltson's] theory, the police would be forced to return to the issuing magistrate to obtain another warrant to search the remainder of the house. Clearly [sic] a result not contemplated by the policy reasons which underscore the enhanced privacy rights found in Article [I], Section 8.

*Waltson*, 724 A.2d at 291-93 (additional internal quotations, citations, and footnotes omitted).

Based on the above analysis, the *Waltson* Court found since the items to be seized were described with specificity and those items could reasonably have been found in places other than the basement, the scope of the search need not be limited to the basement. *Id.* at 293. The Court concluded "although the Pennsylvania Constitution provides greater privacy rights than the Fourth Amendment of the United States Constitution; in the search of a single unit house, these rights are satisfied where the specificity requirement is met. Accordingly, the search warrant issued in the instant case was not overbroad pursuant to Article [I], Section 8 of the Pennsylvania Constitution." *Id.*

We recognize *Waltson* is not on all fours with the present scenario; the house at issue in *Waltson* was occupied by only one individual while the house at issue here was occupied by multiple unrelated individuals. However, the Superior Court has addressed a remarkably similar situation in *Korn*, which we also find persuasive. In *Korn*, a search warrant was obtained and executed on a two-bedroom apartment based on an investigation regarding the sale of controlled substances by Aaron Murray. 139 A.3d at 250. Police not only searched the common areas of the apartment and Murray's own bedroom, but also searched the bedroom of Murray's roommate, Jordan Elias Korn. *Id.* Korn was subsequently arrested and charged with drug-related crimes based on evidence found in his bedroom. *Id.* at 250-51. Korn filed a motion to suppress that evidence and, at a hearing on the motion, officers testified although Korn's bedroom door was locked from the inside at the time they executed the warrant, they did not recall a dead bolt or key lock on the bedroom door, and the bedroom did not have a separate entrance, mailbox, or apartment number. *Id.* at 251. The suppression court granted the motion, finding the single apartment contained multiple living units and, as such, the search of Korn's separate living unit was outside the scope of the probable cause used to obtain the search warrant. *Id.* at 252.

On appeal, the Superior Court reversed, first holding the suppression court's finding that Korn's bedroom was a separate living unit was not supported by the record or case law as the trooper's testimony made clear the residence at issue was a single unit two bedroom apartment. *Id.* at 254-55. The court then applied the analysis from *Waltson* and held there was probable cause to search the entire apartment. *Id.* at 256. In doing so, the court rejected Korn's attempt to distinguish his case from *Waltson*: "we are unpersuaded by [Korn's] attempt to avoid application of *Waltson* because the decision refers to a single family residence. The fact that the suppression hearing transcript does

not establish a familial relationship between [Korn] and one or more of his roommates does not alter the fact that the entire apartment was the subject of the search." *Id.* (internal quotation and citations omitted). Most importantly for purposes of the present analysis, the *Korn* court stated the fact that the bedroom door was locked did not demonstrate "that Mr. Murray could not have exercised dominion or control over the items in [Korn's] room[,]" but instead "establishe[d] nothing more than the fact that Mr. Murray could not enter [Korn's] bedroom at the time of the search." *Id.*

We recognize appellant had a reasonable expectation of privacy in his bedroom but, as the Commonwealth succinctly submits, "this expectation of privacy does not transform the single family townhouse described in the warrant into a multi-unit dwelling." Commonwealth's Brief at 14. Thus, we find no reason to depart from the analyses employed in the cases discussed above, especially the *Edmunds* analysis conducted in *Waltson,* as the text and history of Article I, Section 8 remain the same, and the resulting rule of law continues to be generally accepted by other jurisdictions. *See* Wayne R. LaFave, SEARCH AND SEIZURE, §4.5(b) (5th ed. 2018) ("In the community-occupation situation, the courts have held that a single warrant describing the entire premises so occupied is valid and will justify search of the entire premises."), *citing State v. Champagne*, 879 A.2d 1147 (N.H. 2005); *Ayers*, *supra*; *State v. Woolsey*, 802 P.2d 478 (Haw. 1990); *State v. Capps*, 342 S.E.2d 676 (Ga. 1986); *State v. Hymer*, 400 So.2d 637 (La. 1981); *State v. Lehr*, 258 N.W.2d 158 (Iowa 1977); *People v. Govea*, 235 Cal.App.2d 285 (Ca. 1965); *Renner v. State*, 216 S.W.2d 345 (Tenn. 1948); *Sparks v. State*, 142 P.2d 379 (Ok. 1943).

Additionally, the policy concerns of the *Waltson* Court remain extant and a ruling in favor of appellant under the present circumstances would frustrate the efforts of police when executing valid search warrants. For example, under appellant's view, two

roommates could enter into a conspiracy to sell drugs with roommate one completing each and every sale and roommate two storing the drugs and the proceeds from the sales in his "private" bedroom in their shared house. Police would be able to obtain a search warrant for the house based on the conduct of roommate one, but would be unable to procure any evidence upon execution of the warrant as the bedroom of roommate two — in which the roommates had agreed to hide the evidence — would be beyond the scope of the warrant. As stated in *Waltson*, this is "[c]learly a result not contemplated by the policy reasons which underscore the enhanced privacy rights found in Article [I], Section 8." *Waltson*, 724 A.2d at 293.

Based on all of the above, we restate the law under Article I, Section 8 as follows: "where a search warrant adequately describes the place to be searched and the items to be seized the scope of the search 'extends to the entire area in which the object of the search may be found[.]'" *Id.* at 292, *quoting Reese*, 549 A.2d at 911. Therefore, so long as police have reason to believe the specific items to be seized may be found throughout a single family residence, Article I, Section 8 does not preclude a search of the entire residence regardless of whether a particular individual not named in the warrant has an expectation of privacy in certain areas of that residence. *Id.* at 290.

As stated above in our analysis under the Fourth Amendment, there is no evidence in the record to suggest appellant's bedroom constituted a separate living unit. As such, a search warrant for the house based on the illegal activities of Irvin did not preclude the officers from searching appellant's bedroom inside that house so long as they had reason to believe the items to be seized might be found therein. *See Walston*, 724 A.2d at 292. Appellant's testimony he would shut his bedroom door when he left the residence and did not permit Irvin to enter his bedroom without permission did not negate the probable cause to believe the objects to be seized (in this case heroin, drug paraphernalia,

proceeds from illegal drug sales, and cellphones owned or possessed by Irvin) could be present throughout the entire house just as the fact that Korn's bedroom door was locked at the time the search warrant was executed did not negate the probable cause to search the entire apartment. *See Korn*, 139 A.3d at 256. Accordingly, we hold the search warrant at issue here was not overbroad in violation of Article I, Section 8 of the Pennsylvania Constitution, and suppression of the evidence discovered in appellant's bedroom was not warranted.[8]

Order affirmed.

Chief Justice Saylor and Justices Baer, Todd, Wecht and Mundy join the opinion.

Justice Donohue files a dissenting opinion.

---

[8] Contrary to the dissent's assertion, we do not hold "an individual has no protected reasonable expectation of privacy in his private bedroom if he shares a home with other unrelated individuals." Dissenting Opinion, slip op. at 1. In fact, the dissent acknowledges we explicitly "'recognize appellant had a reasonable expectation of privacy in his bedroom[.]'" *Id.*, *quoting infra* at 20. However, such privacy rights are not absolute and it is black letter law "that when the State's reason to believe incriminating evidence will be found becomes sufficiently great, the invasion of privacy becomes justified and a warrant to search and seize will issue." *Fisher v. United States*, 425 U.S. 391, 400 (1976). Based on the analysis above, we simply hold the officers here had reason to believe evidence of Irvin's criminal activity would be found throughout the single family residence at issue, including appellant's bedroom.